Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/10/2019 09:06 AM CDT

State of Nebraska, appellee, v.
Vazgen Manjikian, appellant.
___ N.W.2d ___

Filed May 10, 2019.    No. S-18-858.

1. **Pleas: Appeal and Error.** A trial court is afforded discretion in deciding whether to accept guilty pleas, and an appellate court will reverse the trial court's determination only in case of an abuse of discretion.

2. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

3. **Judges: Words and Phrases.** A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

4. **Effectiveness of Counsel: Appeal and Error.** Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law.

5. **____: ____.** In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.

6. **Pleas.** To support a finding that a defendant has entered a guilty plea freely, intelligently, voluntarily, and understandingly, a court must inform a defendant about (1) the nature of the charge, (2) the right to assistance of counsel, (3) the right to confront witnesses against the defendant, (4) the right to a jury trial, and (5) the privilege against self-incrimination. The record must also establish a factual basis for the plea and that the defendant knew the range of penalties for the crime charged.

7. **Double Jeopardy.** The Double Jeopardy Clause protects against three distinct abuses: (1) a second prosecution for the same offense after

acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.

8. **Double Jeopardy: Juries: Evidence: Pleas.** In Nebraska, jeopardy attaches (1) in a case tried to a jury, when the jury is impaneled and sworn; (2) when a judge, hearing a case without a jury, begins to hear evidence as to the guilt of the defendant; or (3) at the time the trial court accepts the defendant's guilty plea.

9. **Double Jeopardy: Legislature: Intent: Sentences.** Where the Legislature has demonstrated an intent to permit cumulative punishments, the Double Jeopardy Clause is not violated as long as the cumulative punishments are imposed in a single proceeding.

10. **Waiver: Constitutional Law: Intent: Presumptions: Words and Phrases.** A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege, and courts indulge every reasonable presumption against waiver of fundamental constitutional rights.

11. **Waiver.** The determination of whether there has been an intelligent waiver of a right must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

12. **Pleas: Waiver.** The voluntary entry of a guilty plea or a plea of no contest waives every defense to a charge, whether the defense is procedural, statutory, or constitutional.

13. **Sentences.** When imposing a sentence, the sentencing court is to consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. The sentencing court is not limited to any mathematically applied set of factors.

14. ____. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

15. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense.

16. **Postconviction: Pleas: Waiver: Effectiveness of Counsel.** Normally, a voluntary guilty plea waives all defenses to a criminal charge. However, in a postconviction proceeding brought by a defendant convicted because of a guilty plea or a plea of no contest, a court will

consider an allegation that the plea was the result of ineffective assistance of counsel.

17. **Convictions: Effectiveness of Counsel: Pleas: Proof.** When a conviction is based upon a guilty plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty.

18. **Effectiveness of Counsel: Records: Appeal and Error.** The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved on direct appeal. The determining factor is whether the record is sufficient to adequately review the question.

19. **Trial: Effectiveness of Counsel: Evidence: Appeal and Error.** An ineffective assistance of counsel claim will not be resolved on direct appeal if it requires an evidentiary hearing.

Appeal from the District Court for Lancaster County: Susan I. Strong, Judge. Affirmed.

Jason E. Troia, of Dornan, Troia, Howard, Breitkreutz & Conway, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.

## INTRODUCTION

Following a traffic stop in Lancaster County, Nebraska, Vazgen Manjikian was charged by information with possession of a controlled substance, a Class IV felony. During the course of the traffic stop, an amount of amphetamine, a Schedule II controlled substance, was located, along with $234,956. Pursuant to a plea agreement, Manjikian was charged by amended information with one count of attempted possession of a controlled substance, a Class I misdemeanor. Manjikian now appeals his conviction and sentence on various constitutional grounds. We affirm.

## BACKGROUND

On January 24, 2018, a Lancaster County sheriff's deputy observed a vehicle, bearing New York license plates, traveling westbound on Interstate 80 at mile marker 394 in Lancaster County. The deputy noted that the vehicle was following another vehicle at a distance of .39 seconds and at a speed of 73 miles per hour. The deputy initiated a traffic stop on the vehicle for following too closely. As the deputy was attempting to stop the vehicle, he observed the two occupants making furtive movements in the area around the center console of the vehicle.

Upon contacting the vehicle's occupants, the deputy noted the odor of raw marijuana emanating from the vehicle. The deputy identified the driver as Kevin Conrado, and the only passenger in the vehicle was identified as Manjikian. Conrado was asked for the vehicle's registration and paperwork, which he retrieved from a backpack in the back seat. The vehicle's rental agreement identified the renter as an individual who was later determined to be the brother of Manjikian. Further investigation revealed that following a murder conviction in California, Manjikian's brother had been incarcerated for a period of time preceding the initial rental period of the vehicle. Upon inspecting the vehicle's paperwork and rental agreement, the deputy noted that the rental agreement had expired 4 days prior, on January 20, 2018.

A search of the vehicle resulted in the discovery of two baggies of suspected methamphetamine found in the console area between the driver and passenger seats. The content in the baggies, as confirmed by the Nebraska State Patrol laboratory, was found to be methamphetamine. Deputies noted that one of the baggies was observed to have an end ripped open. The contents of that baggie appeared to have been dumped into an open drink container which was found in the vehicle and which held an unknown liquid.

Manjikian later admitted to a deputy that he possessed a controlled substance in the vehicle; although he referred to the

substance as "Adderall," it was later confirmed to be methamphetamine. In addition to the methamphetamine, deputies also discovered marijuana cigarettes in the center console area and a total of $234,956 in U.S. currency. Conrado's backpack contained $11,300, and Manjikian was in possession of $376, which was found on his person. The remainder of the currency was found stuffed inside three 64-ounce brownie mix cans that were resealed to look as if they were in their original condition.

On March 27, 2018, Manjikian was charged by information in Lancaster County District Court with possession of a controlled substance (amphetamine), a Class IV felony.[1] Manjikian entered a plea of not guilty to the charge.

On June 21, 2018, Manjikian, along with his trial counsel, appeared before the district court at a change of plea hearing. The parties advised the district court that they had reached an agreement wherein Manjikian would plead no contest to an amended information charging him with attempted possession of a controlled substance (methamphetamine) under Neb. Rev. Stat. § 28-201(4)(e) (Reissue 2016) and § 28-416(3), a Class I misdemeanor. In addition, Manjikian agreed to forfeit any interest in the $234,956 that was seized during the traffic stop that led to his arrest. The forfeiture agreement was in writing and stated, in pertinent part:

> Manjikian hereby enters into an agreement with the State of Nebraska in the above captioned matter and agrees that any interest he has in said $234,956.00 shall be forfeited to [U.S. Customs and Border Protection] pursuant to federal forfeiture laws. . . . Manjikian consents to the administrative forfeiture of the $234,956.00 and will not file a claim for it. In agreeing to such forfeiture, . . . Manjikian waives his rights pursuant to Neb. Rev. Stat. §28-431 and the procedural requirements for such forfeitures and waives his rights as they relate

---

[1] See Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 2018).

to claims of double jeopardy pursuant to the United States Constitution Amendment V, the Nebraska State Constitution Article I, section 12, and *State v. Franco*, 257 Neb. 15 (1999);

. . . Manjikian, having consulted with his attorney in the matter, now waives his rights freely, voluntarily, knowingly and intelligently without force, threat, coercion, duress, or promises, other than a plea agreement.

Following a hearing in which the court advised Manjikian of his rights and confirmed his understanding of such, the district court found that Manjikian's plea was "freely, voluntarily, knowingly and intelligently made" and adjudged him guilty of the offense. The court then ordered a presentence investigation and set a date for sentencing.

Manjikian's sentencing hearing was held on August 29, 2018. At the hearing, the district court sentenced Manjikian to 180 days' imprisonment, with 2 days' credit for time served. Manjikian appeals.

## ASSIGNMENTS OF ERROR

In a brief prepared by appellate counsel, Manjikian claims that the district court erred in (1) finding that Manjikian made a free, voluntary, knowing, and intelligent plea; (2) accepting a plea that Manjikian contends violates constitutional protections against double jeopardy; and (3) abusing its discretion in sentencing him to a term of incarceration. Manjikian also contends that he received ineffective assistance of trial counsel.

## STANDARD OF REVIEW

[1] A trial court is afforded discretion in deciding whether to accept guilty pleas, and an appellate court will reverse the trial court's determination only in case of an abuse of discretion.[2]

---

[2] *State v. Wilkinson*, 293 Neb. 876, 881 N.W.2d 850 (2016).

[2,3] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.[3] A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[4]

[4,5] Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law.[5] In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.[6]

## ANALYSIS

### Manjikian's Free, Voluntary, Knowing, and Intelligent Plea.

In his first assignment of error, Manjikian contends that the plea agreement he entered into with the State was not entered into freely, voluntarily, knowingly, or intelligently. According to Manjikian, the district court failed to advise him that by entering into the plea agreement, he waived his right to appeal any adverse decisions had he filed pretrial motions or proceeded to trial. Manjikian argues that the court's failure in this respect results in his plea not being made freely, voluntarily, knowingly, and intelligently.

[6] Under our holding in *State v. Lane*,[7] to support a finding that a defendant has entered a guilty plea freely, intelligently, voluntarily, and understandingly, a court must inform

---

[3] *State v. Steele*, 300 Neb. 617, 915 N.W.2d 560 (2018).

[4] *State v. Clemens*, 300 Neb. 601, 915 N.W.2d 550 (2018).

[5] *State v. Vanness*, 300 Neb. 159, 912 N.W.2d 736 (2018).

[6] *Id.*

[7] *State v. Lane*, 299 Neb. 170, 907 N.W.2d 737 (2018).

a defendant about (1) the nature of the charge, (2) the right to assistance of counsel, (3) the right to confront witnesses against the defendant, (4) the right to a jury trial, and (5) the privilege against self-incrimination. The record must also establish a factual basis for the plea and that the defendant knew the range of penalties for the crime charged.[8]

Manjikian now argues, without binding authoritative support, that the court was also required, during the plea colloquy, to advise him of the fact that his plea would result in the waiver of his right to appeal any adverse decision had he filed pretrial motions or proceeded to trial. Manjikian further contends that the court was also required to advise him that appellate counsel and costs would be provided, had he qualified.

Manjikian would have us adopt a new prerequisite to accepting a plea in the form of the American Bar Association's Standard 14-1.4(a)(vi), requiring the court to advise the defendant that "by pleading guilty the defendant generally waives the right to appeal, except the right to appeal a motion that has been made, ruled upon and expressly reserved for appeal and the right to appeal an illegal or unauthorized sentence."[9]

We have consistently held that the rule to be distilled from our prior holdings is that in order to support a finding that a plea of guilty or nolo contendere has been entered freely, intelligently, voluntarily, and knowingly, the court must inform the defendant concerning the nature of the charge,[10] the right to assistance of counsel,[11] the right to confront witnesses against the defendant,[12] the right to a jury trial,[13] and the privilege

---

[8] *Id.*

[9] ABA Standards for Criminal Justice, Pleas of Guilty, Standard 14-1.4(a) (vi) at 36 (3d ed. 1999).

[10] *State v. Turner*, 186 Neb. 424, 183 N.W.2d 763 (1971), *disapproved on other grounds, State v. Irish*, 223 Neb. 814, 394 N.W.2d 879 (1986).

[11] *State v. Tweedy*, 209 Neb. 649, 309 N.W.2d 94 (1981).

[12] *Id.*

[13] *Id.*

against self-incrimination.[14] The court must also examine the defendant and determine whether he or she understands the foregoing.[15] Lastly, the court must ensure the record establishes that there is a factual basis for the plea and that the defendant knew the range of penalties for the crime with which he or she is charged.[16]

As we stated in *State v. Irish*, "[we recognize] that the work of the ABA, although good and useful, nevertheless does not rise to the status of legislative acts or judicial holdings."[17] Through painstaking judicial work, we have established the minimum requirements for the court to accept a plea as being entered freely, intelligently, voluntarily, and knowingly.

Additionally, as we indicated in *State v. Turner*,[18] a requirement of an item-by-item review of constitutional rights on a guilty plea is a strained and a too extreme construction of the U.S. Supreme Court's holdings in *Boykin v. Alabama*[19] and *McCarthy v. United States*.[20] Both Boykin and McCarthy dealt with a court's duties under Fed. R. Crim. P. 11 as it relates to a defendant's voluntarily and intelligently made plea agreement.

Here, the record demonstrates that the district court advised Manjikian at length about the nature of the charge, made significant reference to his right to assistance of counsel, and advised Manjikian of the right to confront witnesses against him, the right to a jury trial, and the privilege against self-incrimination. Beyond the required admonishments enumerated in *Lane*, the court went on to specifically warn Manjikian that

---

[14] *Id.*

[15] *Irish, supra* note 10.

[16] *Id.*

[17] *Id*. at 818, 394 N.W.2d at 882.

[18] *Turner, supra* note 10.

[19] *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969).

[20] *McCarthy v. United States*, 394 U.S. 459, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969).

his plea would waive his right to additional hearings regarding pretrial motions, had he subsequently decided to make any.

Based on the foregoing analysis, Manjikian's plea was entered freely, voluntarily, knowingly, and intelligently. We decline his invitation to adopt the American Bar Association's Standard 14-1.4(a)(vi), and we find his assignment of error to be without merit.

*Double Jeopardy.*

Manjikian next assigns that the district court erred and abused its discretion in accepting his no contest plea. Manjikian contends that such acceptance violated double jeopardy principals. Specifically, Manjikian argues that our precedent in *State v. Spotts*[21] acts to bar the State from seeking both forfeiture and subsequent criminal prosecution.

At oral arguments, for the first time, the State argued that the money seized during the traffic stop was abandoned property, because Manjikian disclaimed ownership of the money in a statement to law enforcement. The State further argues that Manjikian cannot now claim double jeopardy applies because of the forfeiture of the funds that he had earlier proclaimed were not his. The State's contention regarding abandonment was not discussed below, nor was it specifically assigned in their brief. We proceed, therefore, to analyze Manjikian's double jeopardy claim.

The U.S. Supreme Court has noted that the constitutional prohibition against double jeopardy was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.[22] In *Benton v. Maryland*,[23] the Court applied the 5th Amendment's

---

[21] *State v. Spotts*, 257 Neb. 44, 595 N.W.2d 259 (1999).

[22] *Green v. United States*, 355 U.S. 184, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957).

[23] *Benton v. Maryland*, 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969).

protection against double jeopardy to the states through the Due Process Clause of the 14th Amendment, noting that the protection "represents a fundamental ideal in our constitutional heritage."[24]

[7,8] The Double Jeopardy Clause protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.[25] In Nebraska, jeopardy attaches (1) in a case tried to a jury, when the jury is impaneled and sworn; (2) when a judge, hearing a case without a jury, begins to hear evidence as to the guilt of the defendant; or (3) at the time the trial court accepts the defendant's guilty plea.[26]

Manjikian's double jeopardy claim in this case appears to be based on the prohibition of multiple punishments for the same offense, i.e., the seizure and jail sentence.

In *State v. Franco*,[27] we stated that since *State v. One 1987 Toyota Pickup*,[28] we have determined that the Legislature intended forfeiture actions pursuant to Neb. Rev. Stat. § 28-431 (Reissue 2008) to be criminal proceedings. In *Franco*, a criminal defendant was charged with a crime and faced the forfeiture of personal property seized during his arrest. The district court concluded that the crime and the actions leading to forfeiture constituted separate criminal offenses so that the prosecution of both was not barred by double jeopardy. On appeal, this court disagreed, instead holding that a forfeiture action pursuant to § 28-431 necessarily required the proof of a violation of chapter 28, article 4, of the Nebraska Revised Statutes. In *Franco*, the defendant's

---

[24] *Id.*, 395 U.S. at 794.

[25] *Spotts, supra* note 21.

[26] *State v. Thalken*, 299 Neb. 857, 911 N.W.2d 562 (2018).

[27] *State v. Franco*, 257 Neb. 15, 594 N.W.2d 633 (1999).

[28] *State v. One 1987 Toyota Pickup*, 233 Neb. 670, 447 N.W.2d 243 (1989), *overruled, Spotts, supra* note 21.

violation of § 28-416(1)(a)—the statute which charged him with possession of a controlled substance—had to be proved. We concluded that § 28-416(1)(a) was subsumed within § 28-431 and that as such, the two statutes were not defining separate offenses. In short, we held that the State could not seek forfeiture of property and then proceed in a criminal prosecution arising from the same set of facts without offending double jeopardy.[29]

[9] However, we went on to note that the *Blockburger* test, enumerated in *Blockburger v. United States*,[30] which is applied to prevent double punishment in situations where the Legislature intended to provide only for a single punishment, did not prevent the State from seeking a criminal prosecution and a forfeiture in the same proceeding if there was legislative intent to do so. We concluded that the Nebraska Legislature intended for punishments pursuant to §§ 28-416(1)(a) and 28-431 to be imposed cumulatively.[31] Where the Legislature has demonstrated an intent to permit cumulative punishments, the Double Jeopardy Clause is not violated as long as the cumulative punishments are imposed in a single proceeding.[32]

In *Spotts*, we reinforced our holding in *Franco*. The defendant in *Spotts* was arrested by the Nebraska State Patrol for being in possession of a controlled substance with the intent to deliver, a Class III felony. Before his criminal information was filed, the State sought forfeiture of $14,177 found on the defendant's person at the time of his arrest. Following his initial appearance at his criminal trial, he filed a plea in bar alleging in pertinent part that the conduct which exposed him to forfeiture of the $14,177 was the same conduct which

---

[29] See *Franco, supra* note 27.

[30] *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

[31] *Franco, supra* note 27.

[32] *Id.*

exposed him to liability and punishment for the possession of methamphetamine. The defendant alleged that in order to forfeit the money found on his person, he would have had to commit one and the same offense as charged in the information. He asserted that the prosecution for possession of methamphetamine was barred, because said prosecution would expose him to double jeopardy.

In *Spotts*, we reiterated that forfeiture actions pursuant to § 28-431 constituted criminal proceedings. We ultimately found that *Franco* controlled, concluding that the Nebraska Legislature intended for punishments pursuant to §§ 28-416(1)(a) and 28-431 be imposed cumulatively. Where the Legislature has demonstrated an intent to permit cumulative punishments, the Double Jeopardy Clause is not violated as long as the cumulative punishments are imposed in a single proceeding. In *Spotts*, we ultimately agreed with the district court when it stated: "'[I]f [a] forfeiture action arises out of the underlying criminal case, the State is placed in the position of having to decide whether to pursue the forfeiture proceeding or whether to pursue the criminal proceeding.'"[33]

We observe that in 2016, the Legislature revised §§ 28-416 and 28-431.[34] Because we find that Manjikian expressly waived his constitutional right against double jeopardy when he entered into the plea agreement,[35] we express no opinion as to whether the revisions enacted by the Legislature change the viability of *Franco* and *Spotts*. Therefore we need not venture into a comprehensive analysis under *Spotts*.

[10,11] The U.S. Supreme Court has indicated that a waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege, and courts indulge every reasonable presumption against waiver of fundamental

---

[33] *Spotts, supra* note 21, 257 Neb. at 49, 595 N.W.2d at 262.

[34] See 2016 Neb. Laws, L.B. 1106, §§ 5 and 6.

[35] See *State v. Dye*, 291 Neb. 989, 870 N.W.2d 628 (2015).

constitutional rights.[36] The determination of whether there has been an intelligent waiver of a right must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.[37]

In this case, Manjikian's plea agreement in relevant part specifically stated:

> In agreeing to such forfeiture, . . . Manjikian waives his rights pursuant to Neb. Rev. Stat. §28-431 and the procedural requirements for such forfeitures and waives his rights as they relate to claims of double jeopardy pursuant to the United States Constitution Amendment V, the Nebraska State Constitution Article I, section 12, and *State v. Franco*, 257 Neb. 15 (1999)[.]

Based on the record, Manjikian has some formal education and has previously been involved in the California criminal justice system. Beyond his personal history which is informative of his background and understanding, when asked by the court whether he understood the plea agreement and his rights, Manjikian consistently answered that he was aware of the particular details of the agreement and had entered the agreement voluntarily.

[12] We have repeatedly held that the voluntary entry of a guilty plea or a plea of no contest waives every defense to a charge, whether the defense is procedural, statutory, or constitutional.[38] This includes the right against double jeopardy; we have held that such exceptions include the defenses of insufficiency of the indictment, information, or complaint; ineffective assistance of counsel; and lack of jurisdiction.[39]

---

[36] See *Johnson v. Zerbst*, 304 U.S. 458, 58 S. Ct. 1019, 82 L. Ed. 2d 1461 (1938). See, also, *Ricketts v. Adamson*, 483 U.S. 1, 107 S. Ct. 2680, 97 L. Ed. 2d 1 (1987) (Brennan, J., dissenting).

[37] *Johnson, supra* note 36.

[38] See *State v. Biernacki*, 237 Neb. 215, 465 N.W.2d 732 (1991).

[39] *State v. Start*, 239 Neb. 571, 477 N.W.2d 20 (1991).

The record in this case is clear. Manjikian waived his right against double jeopardy when he entered into the plea agreement; therefore, Manjikian's assignment of error with regard to being put twice in jeopardy is without merit.

*Sentence.*

Manjikian next assigns as error that the court abused its discretion in sentencing him to a term of incarceration. Manjikian argues that the district court relied on improper information contained in the presentence investigation and on comments made by the prosecution alleging, without evidence, that Manjikian was involved in organized crime. His argument appears to further contend that probation would have been the appropriate sentence in this case.

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.[40] A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[41]

[13,14] When imposing a sentence, the sentencing court is to consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime.[42] However, the sentencing court is not limited to any mathematically applied set of factors.[43] The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor

---

[40] *Steele, supra* note 3.

[41] *Clemens, supra* note 4.

[42] *State v. Wofford*, 298 Neb. 412, 904 N.W.2d 649 (2017).

[43] *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017).

and attitude and all the facts and circumstances surrounding the defendant's life.[44]

Here, the record establishes that the district court reviewed the presentence investigation report and considered all appropriate sentencing factors. The comments made by the district court noted at sentencing that the "facts and circumstances of this case" were "somewhat disturbing." Although the presentence report and comments made by the prosecution regarding Manjikian's alleged connections to organized crime were largely unsubstantiated, there is no indication that the district court's sentence turned solely on those claims.

The court's comments at sentencing do not indicate that the district court considered any inappropriate factors in determining the sentence to be imposed. The presentence report contains significant findings regarding Manjikian's violent criminal history, unauthorized possession of weapons, previous flight from justice, and propensity for poor impulse control and decisionmaking. Based on the facts and circumstances surrounding Manjikian's life and the crime charged, we cannot say that the district court abused its discretion in sentencing him to 180 days' incarceration.

Manjikian's assignment of error regarding the court's decision to sentence him to 180 days in jail is without merit.

*Ineffective Assistance of Counsel.*

Lastly, Manjikian claims that he received ineffective assistance of counsel in violation of his 6th Amendment right as applied to the states through the Due Process Clause of the 14th Amendment. Manjikian contends that his trial counsel's performance fell below the range of competence demanded of attorneys in criminal cases.

Specifically, Manjikian points to four instances in particular in which he claims trial counsel was deficient. First, Manjikian argues that his codefendant had signed a written confession

---

[44] *Id.*

and was prepared to testify that the controlled substance was not Manjikian's. Manjikian argues that trial counsel was ineffective in advising Manjikian that his codefendant's statement and proposed testimony would not be sufficient to convince a jury. Second, Manjikian claims that trial counsel advised him a jury would likely convict him based on his being from out of state and that this erroneous advice caused Manjikian to enter into a plea agreement rather than proceed to trial. Third, Manjikian claims that trial counsel incorrectly advised him that observing his codefendant "do something" with the substance upon the officer's initiating the traffic stop was sufficient evidence to sustain a conviction for the crime with which he was charged, leading him to forgo his right to trial.[45] Lastly, Manjikian contends that his counsel failed to protect his rights against double jeopardy by not filing a plea in bar.

[15] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*,[46] the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense.[47] The two prongs of this test may be addressed in either order, and the entire ineffective assistance analysis should be viewed with a strong presumption that counsel's actions were reasonable.[48]

[16,17] Normally, a voluntary guilty plea waives all defenses to a criminal charge. However, in a postconviction proceeding brought by a defendant convicted because of a guilty plea or a plea of no contest, a court will consider an allegation that the plea was the result of ineffective assistance of counsel.[49] When a conviction is based upon a guilty plea,

---

[45] Brief for appellant at 20.

[46] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[47] *State v. Ash*, 293 Neb. 583, 878 N.W.2d 569 (2016).

[48] *Id.*

[49] *State v. Amaya*, 276 Neb. 818, 758 N.W.2d 22 (2008).

the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty.[50]

The likelihood of the defense's success had the defendant insisted on going to trial is relevant to the prejudice analysis[51]; it is relevant to the consideration of whether a rational defendant would have insisted on going to trial.[52] The likelihood of the defense's success had the defendant gone to trial should be considered along with other factors, such as the likely penalties the defendant would have faced if convicted at trial, the relative benefit of the plea bargain, and the strength of the State's case.[53]

Where, as here, appellate counsel is different from trial counsel, a defendant must raise on direct appeal any issue of ineffective assistance of trial counsel which is known to the defendant or is apparent from the record, or the issue will be procedurally barred on postconviction review.[54] An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court.[55]

[18,19] The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean

---

[50] *State v. Armendariz*, 289 Neb. 896, 857 N.W.2d 775 (2015).

[51] See *State v. Yos-Chiguil*, 281 Neb. 618, 798 N.W.2d 832 (2011).

[52] *Id.*

[53] *Id.*

[54] *State v. Watt*, 285 Neb. 647, 832 N.W.2d 459 (2013).

[55] *Ash, supra* note 47.

that it can be resolved on direct appeal.[56] The determining factor is whether the record is sufficient to adequately review the question.[57] An ineffective assistance of counsel claim will not be resolved on direct appeal if it requires an evidentiary hearing.[58]

In this case, the State submits that the record is sufficient to resolve Manjikian's claims of ineffective assistance of counsel and contends that Manjikian's claims are without merit. In regard to Manjikian's claim that his codefendant had signed a written confession and was prepared to testify that the controlled substance was not Manjikian's, the State directs our attention to Manjikian's own admissions which clearly refute any potential testimony of his codefendant. As to Manjikian's claim that trial counsel's statement as to the risk of conviction based on Manjikian's being from out of state, the State contends that such claims are betrayed by Manjikian's own admission to law enforcement. The State argues that Manjikian's admissions would have carried substantial weight which alone could have led to a conviction. The State directs our attention to the recorded jail telephone call between Manjikian and a sheriff's deputy in which Manjikian admitted that he had been in possession of "Adderall," an admission that supported Manjikian's plea.

In regard to Manjikian's claim that trial counsel failed to protect his right against double jeopardy, the record clearly refutes his claim, because he knowingly, intentionally, and voluntarily agreed, as a part of the plea agreement with the State, to forfeit the money to the federal government. Moreover, as noted above, the plea agreement specifically recited that Manjikian "waives his rights as they relate to claims of double jeopardy pursuant to the United States Constitution

---

[56] *Id.*

[57] *Id.*

[58] *Id.*

Amendment V, [and] the Nebraska State Constitution Article I, section 12." Therefore, unlike the defendants in *Franco*[59] and *Spotts*,[60] Manjikian was not subjected to successive criminal prosecutions, but instead agreed to the forfeiture and reduced criminal charge in exchange for his plea.

Given the fact that Manjikian and his codefendant were transporting $234,956 on their persons, as well as in various sealed containers, while being in possession of an amount of methamphetamine and in a vehicle rented to Manjikian's brother, who was incarcerated at the time of the rental agreement, it cannot be said that Manjikian's defense had a strong likelihood of success on the merits. This is especially true given the fact that Manjikian admitted to law enforcement that he had been in possession of "Adderall," a controlled substance.

Had the plea agreement not been reached, Manjikian was facing a charge of possession of a controlled substance (amphetamine), a Class IV felony under § 28-416(3), which carries a potential maximum sentence of 2 years' imprisonment and 12 months' postrelease supervision or a $10,000 fine, or both, and a minimum sentence of 9 months' postrelease supervision, if imprisonment is imposed.[61] In light of the potential penalty he faced, had Manjikian not pled to the lower Class I misdemeanor, the weight of the evidence and the fact that our ineffective assistance analysis is viewed with a strong presumption that counsel's actions were reasonable, we cannot say that Manjikian's trial counsel was ineffective in regard to the plea agreement.

Further, we cannot say that trial counsel was incorrect in advising Manjikian regarding possession. We have previously stated that "possession of an illegal substance can be inferred from a vehicle passenger's proximity to the substance

---

[59] *Franco, supra* note 27.

[60] *Spotts, supra* note 21.

[61] See Neb. Rev. Stat. § 28-105 (Reissue 2016).

or other circumstantial evidence that affirmatively links the passenger to the substance."[62] Given this prior holding and Manjikian's admission, we cannot say that Manjikian's claim that his codefendant was willing to testify and provide a written statement as to being the alleged true possessor of the controlled substance rises to the level of establishing that Manjikian suffered actual prejudice as a result of choosing to enter a plea instead of risking a trial. Trial counsel is afforded due deference to formulate trial strategy and tactics, and we are not to second-guess trial counsel's reasonable strategic decisions when reviewing claims of ineffective assistance of counsel.[63]

## CONCLUSION

The district court did not err in finding that Manjikian made a free, voluntary, knowing, and intelligent plea. Additionally, the district court did not err in accepting the plea as it did not violate double jeopardy, because Manjikian waived his rights as evidenced by the language of the plea agreement. Further, the district court did not abuse its discretion in sentencing Manjikian to a term of incarceration. Lastly, Manjikian did not receive ineffective assistance of trial counsel.

The decision of the district court is affirmed.

AFFIRMED.

---

[62] *State v. Draganescu*, 276 Neb. 448, 478, 755 N.W.2d 57, 85 (2008).

[63] See *State v. Rocha*, 286 Neb. 256, 836 N.W.2d 774 (2013).