IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. DAVALOS-ROMO


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

KARLA N. DAVALOS-ROMO, APPELLANT.


Filed May 30, 2023.    No. A-22-674.


Appeal from the District Court for Sarpy County: GEORGE A. THOMPSON, Judge. Affirmed.

Oluseyi O. Olowolafe for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.


RIEDMANN, BISHOP, and ARTERBURN, Judges.

ARTERBURN, Judge.

## INTRODUCTION

Karla N. Davalos-Romo appeals her plea-based conviction and sentence from the Sarpy County District Court. Davalos-Romo entered a plea of no contest to two counts of criminal attempt, aid and abet first degree sexual assault and two counts of child abuse. On appeal, Davalos-Romo asserts the court erred in accepting her plea as voluntary and imposing an excessive sentence. She further argues that she received ineffective assistance of counsel. Following our review of the record, we affirm Davalos-Romo's convictions and sentences.

## BACKGROUND

On June 9, 2021 the State filed an information in the district court charging Davalos-Romo with two counts of child abuse, each a Class IIIA felony. On February 7, 2022, the State filed an amended information adding two counts of aid and abet first degree sexual assault of a child, each a Class IB felony. Davalos-Romo and the State then entered into a plea agreement. The State filed

- 1 -

an amended information on May 16, 2022, charging Davalos-Romo with two counts of "Criminal attempt-aid and abet first degree sexual assault," each listed as a Class IIA felony, and two counts of child abuse, each listed as a Class IIIA felony. In return, Davalos-Romo entered a plea of no contest to all four counts on that day.

During the plea colloquy Davalos-Romo was aided by a court appointed Spanish interpreter. The court advised Davalos-Romo of her constitutional rights to which Davalos-Romo indicated that she understood. The court also asked Davalos-Romo if she was suffering from any mental illness or mental or emotional defect. Davalos-Romo responded that she suffers from severe anxiety and depression but was currently on medication. She informed the court that outside of normal nervousness, she felt "good." Davalos-Romo's counsel reiterated that she was fine while on her medication and stated he did not have any concern regarding her entry of plea.

The State provided the following factual basis for the charges:

Your Honor, if this would proceed to the trial, the State would put on evidence that in a home in Sarpy County a Miguel Gonzales Torres and Karla Davalos-Romo were raising their kids, [S.G.D.] and [M.G.D.]. The investigation shows that numerous times, including in May of 2010, Miguel Gonzales Torres was penetrating and sexually assaulting both [S.G.D.] and [M.G.D.], who at the time were children. [M.G.D.] being born in 1997. [S.G.D.] being born in 2004.

Further it was investigated and found to be true that [Karla] Davalos-Romo was present during these sexual assaults and had told [M.G.D.] that it was okay for her father to touch her, kiss her, lick her, and penetrate her.

The court accepted Davalos-Romo's pleas and ordered that a presentence investigation report (PSR) be prepared. Sentencing was scheduled for August 8, 2022.

On May 23, 2022, the State filed an amended information in order to correct the penalty classifications on the two charges of attempted aiding and abetting of first degree sexual assault. Because the offenses outlined in counts 1 and 2 were alleged to have taken place in 2010, the penalty classifications were amended to Class III felonies to conform to the penalties that existed at the time the offenses were committed. At the hearing originally scheduled for sentencing on August 8, 2022, the court concluded that Davalos-Romo should be re-advised of her rights due to the changes made and that she should be given the opportunity to enter pleas to the May 23 amended information. The court continued the matter to August 16 for a new plea hearing and sentencing.

On August 16, 2022, Davalos-Romo was again aided by a court appointed Spanish interpreter. The court again advised Davalos-Romo of her constitutional rights. Davalos-Romo again acknowledged her understanding of those rights and that her no contest pleas would waive them. The court then proceeded to inform Davalos-Romo specifically that if she entered a no contest plea to the child abuse charges, she would be waiving her right to assert a statute of limitations defense thereto. Davalos-Romo responded that she understood.

The court also inquired about Davalos-Romo's mental state. She indicated she was still current on her medication. The court clarified that it was asking to ensure she understood the proceedings. Again, defense counsel stated she was just nervous and there were no concerns about entering her plea. Davalos-Romo then entered no contest pleas to all four charges contained in the

May 23, 2022, amended information. The State provided substantially the same factual basis as at the prior plea hearing. The court reminded Davalos-Romo that the court was not part of any plea agreement and would sentence her as the court saw fit regardless of any agreements made. The court ultimately accepted Davalos-Romo's no contest pleas and proceeded to sentencing.

The PSR revealed that at the time of sentencing Davalos-Romo was 45 years old with a ninth-grade education. She had a minimal criminal history of only minor traffic offenses and a shoplifting conviction in 2012. However, the probation office recommended a straight sentence for Davalos-Romo and noted that she had a tendency to "deny common problems and portray [her]self in an overly favorable light." In her statement, Davalos-Romo accused her children's foster parents of turning her children against her by making them lie about her. She also stated that she never saw her husband inappropriately touch the children. She stated that she has vision problems such that she would not have seen it right in front of her. The probation office noted that she had no problems reading the papers in front of her or finding information on her phone during the interview. Both S.G.D. and M.G.D. provided victim impact statements as well. Those statements, as well as statements to law enforcement, revealed that for a period of years, beginning when the girls were approximately five years old, their father sexually abused and penetrated them with Davalos-Romo present. Davalos-Romo would hold their hands and inform them that their father's actions were acceptable since he was their father. Often, Davalos-Romo and her husband would follow the abuse of the children by having sexual intercourse in the presence of the children. One of the children also reported that Davalos-Romo invited other men to have sexual intercourse with her and involved her child in the sexual acts. Both expressed the damage they had undergone due to their parents actions.

At the sentencing hearing, the court reviewed the information presented in the PSR. The court also calculated that Davalos-Romo avoided nearly 50 to 60 years of potential prison time in the plea agreement. After considering the PSR, the statements made by counsel, and the history, character, and condition of Davalos-Romo, the court found that imprisonment was necessary for the protection of the public because there was a substantial risk that she would engage in additional criminal conduct if placed on probation. The court also commented that:

The crimes here – well, Court has been in the justice world for nearly well over two decades. And it's hard to fathom that the one person that's supposed to protect these individuals is the person that helped with what occurred with them and how it destroyed their lives. And that truly makes up one of the most egregious crimes I've seen.

The court sentenced Davalos-Romo to a period of 10 to 20 years' imprisonment on each count of attempted aiding and abetting of first degree sexual assault, and for a period of 2 to 3 years' imprisonment on each count of child abuse. The sentences were ordered to run consecutively. Davalos-Romo was given credit for 5 days' served. The court also ordered that Davalos-Romo register with the Nebraska Sex Offender Registry as required by statute.

Davalos-Romo appeals.

ASSIGNMENTS OF ERROR

Davalos-Romo makes the following assignments of error: (1) the district court erred in accepting Davalos-Romo's plea of no contest; (2) trial counsel was ineffective for failing to (a)

assert the statute of limitations defense, (b) investigate Davalos-Romo's defenses, (c) truthfully advise Davalos-Romo regarding the outcome of the case, and (d) explain documents signed by Davalos-Romo; and (3) the district court abused its discretion by imposing an excessive sentence.

## STANDARD OF REVIEW

A trial court is afforded discretion in deciding whether to accept guilty pleas, and an appellate court will reverse the trial court's determination only in case of an abuse of discretion. *State v. Manjikian*, 303 Neb. 100, 927 N.W.2d 48 (2019).

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *Id.* In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *Id.* A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

## ANALYSIS

*Voluntariness of Plea.*

We begin with Davalos-Romo's assertion that the court erred in accepting her no contest pleas. According to Davalos-Romo her pleas were not knowing and voluntary because she was under severe emotional distress at the time of the plea hearing. Upon our review of the record, we find that the court did not err by accepting Davalos-Romo's pleas.

To support a finding that a defendant freely, intelligently, voluntarily, and understandingly entered a guilty or no contest plea, a court must inform the defendant of (1) the nature of the charges; (2) the right to assistance of counsel; (3) the right to confront witnesses against the defendant; (4) the right to a jury trial; and (5) the privilege against self-incrimination. *State v. Manjikian, supra*. A voluntary and intelligent waiver of the above rights must affirmatively appear on the face of the record. *State v. Mead*, 313 Neb. 892, 987 N.W.2d 271 (2023). The record must also establish a factual basis for the plea and that the defendant knew the range of penalties for the crime charged. *Id.*

Davalos-Romo asserts that the court did not fully examine her in order to determine whether she understood her rights. Specifically, Davalos-Romo argues that when the court learned that she was on medication for her anxiety and depression, the court should have inquired as to what medications she was taking and whether those medications would impact her ability to make a voluntary and knowing plea. Additionally, Davalos-Romo asserts that she was released from the hospital the morning of August 16, 2022, after receiving treatment relating to her severe depression and anxiety, which left her in severe emotional distress. Davalos-Romo's argument is not supported by the record.

The primary hearing of concern is the August 16, 2022, plea hearing. However, statements made by Davalos-Romo and her counsel at the May 16 plea hearing are relevant as context to the

statements made on August 16. At the plea hearing on August 16, neither Davalos-Romo nor her counsel made any mention of Davalos-Romo's alleged hospitalization. In fact, defense counsel informed the court that he had no concerns regarding Davalos-Romo's entry of plea and stated she was just nervous. At both the May 16 and August 16 plea hearings, Davalos-Romo told the court she suffered anxiety and depression but was current on her medication. At the May 16 hearing, defense counsel clarified that "as long as she [i]s on her medication as prescribed she is fine."

Finally, the record reflects that on August 16, 2022, the district court advised Davalos-Romo regarding the nature of the charges filed against her, the possible penalties that could be imposed, and her rights including her right to a jury trial, right to representation, right to confront witnesses against her, right to subpoena witnesses on her behalf, right to testify or remain silent, and right to be presumed innocent. Davalos-Romo affirmed that she understood the nature of the charges as well as her rights as they were explained by the court at both plea hearings. The State recited a factual basis for the charges without any objection from Davalos-Romo. Additionally, she was aided by a Spanish interpreter to ensure she fully understood the proceedings. Davalos-Romo made no indication during the plea hearing that she did not understand the proceedings or the ramifications of her actions. The steps taken by the court were sufficient to ensure Davalos-Romo's pleas were knowingly and voluntarily made. The court did not err in accepting Davalos-Romo's pleas of no contest.

*Ineffective Assistance of Counsel Claims.*

Next, we address Davalos-Romo's ineffective assistance of counsel claims. Davalos-Romo asserts, reordered, that her counsel was ineffective for failing to (1) assert the statute of limitations defense, (2) truthfully advise Davalos-Romo regarding the outcome of the case, (3) investigate Davalos-Romo's defenses, and (4) explain documents signed by Davalos-Romo.

As it pertains to Davalos-Romo's claims that her trial counsel was ineffective for failing to investigate her defenses and explain documents signed by Davalos-Romo, we find that these allegations are insufficiently pled. The Nebraska Supreme Court has held that when raising an ineffective assistance claim on direct appeal, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). The court has long held that an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *Id.* It follows that an appellate court should not have to scour the argument section of an appellant's brief to extract specific allegations of deficient performance. *Id.* Davalos-Romo's third and fourth allegations of ineffective assistance of trial counsel fail to provide the requisite specificity and we will not scour the remainder of her brief in search of such specificity. Therefore, we will not consider these assignments of error.

We turn now to Davalos-Romo's remaining claims. Davalos-Romo first argues her trial counsel was ineffective for failing to assert a statute of limitations defense as it applies to one of the child abuse charges. Davalos-Romo next argues her trial counsel was ineffective for failing to truthfully advise her regarding the outcome of the case. Upon our review of the record, we find that neither of these claims has merit.

When a defendant's trial counsel is different from her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is

known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Warner*, 312 Neb. 116, 977 N.W.2d 904 (2022). An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *State v. John*, 310 Neb. 958, 969 N.W.2d 894 (2022). The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved on direct appeal. *State v. Warner, supra*. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.*

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Stricklin*, 310 Neb. 478, 967 N.W.2d 130 (2021). To show that counsel's performance was deficient, the defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. *Id.* In determining whether trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably. *State v. Jaeger*, 311 Neb. 69, 970 N.W.2d 751 (2022). Strategic decisions made by trial counsel will not be second-guessed so long as those decisions are reasonable. *Id.* When a conviction is based upon a guilty plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *State v. Manjikian*, 303 Neb. 100, 927 N.W.2d 48 (2019).

Davalos-Romo first argues that her counsel was deficient for failing to assert the statute of limitations defense as it applies to the count of child abuse involving M.G.D., which was alleged to have occurred in May 2010. The statute of limitations for claims of child abuse under Neb. Rev. Stat. § 28-707 (Reissue 2016) is "seven years next after the offense has been committed or within seven years next after the victim's sixteenth birthday, whichever is later." Neb. Rev. Stat. § 29-110(3) (Reissue 2016). M.G.D. was born in 1997, which means she turned 16 in 2013. The statute of limitations ran out in 2020. The original information was filed May 10, 2021, outside of the statute of limitations. Davalos-Romo claims her counsel was ineffective for failing to discuss the statute of limitations defense with her and then encouraging her to waive the defense through her entry of a no contest plea.

Davalos-Romo's argument is without merit. During the plea colloquy on August 16, 2022, the court specifically informed Davalos-Romo that by entering a no contest plea, she was waiving the statute of limitations defense for any charge that was filed outside the allowable limits. Davalos-Romo affirmed she understood and proceeded to enter her pleas of no contest. Her plea was counseled. While Davalos-Romo could have likely obtained the dismissal of at least one Class IIIA felony, her attorney had negotiated a plea agreement that reduced two Class IB felonies down to Class III felonies. A Class IB felony under the charged statute carries a penalty of a mandatory minimum of 15 years to life in prison. The maximum penalty of a Class III felony for the time

period when the offenses took place was 20 years which could be cut in half with good time. The plea agreement clearly made the waiver of the statute of limitations defense to the child abuse charge, a Class IIIA felony, worth it given the overall dramatic reduction of exposure to a lengthy prison sentence. Because Davalos-Romo was clearly informed that she was waiving her right to a statute of limitations defense and proceeded to enter her pleas without question, she cannot establish prejudice particularly given the beneficial nature of the plea agreement that she negotiated. Therefore, Davalos-Romo's first ineffective assistance of counsel claim fails.

Davalos-Romo next argues that her counsel was ineffective for failing to truthfully inform her regarding the outcome of the case. According to Davalos-Romo, trial counsel reportedly told her that her case "looked good" and she would only be sentenced to five years' imprisonment if she entered pleas of no contest. Brief for appellant at 24. Davalos-Romo cannot establish prejudice with this claim.

Regardless of what trial counsel said to her, the record clearly shows that the court informed Davalos-Romo multiple times of the possible penalties she faced as well as the possibility that any sentence imposed could be ordered to run consecutively or concurrently. The court specifically told Davalos-Romo that it was not bound by any plea agreement and that the court alone would determine what sentence Davalos-Romo would receive. Davalos-Romo indicated that she understood. Because it was clearly communicated to Davalos-Romo that the court alone would determine the appropriate sentence to be imposed, she cannot establish that she was prejudiced by trial counsel's actions. Therefore, Davalos-Romo's final claim of ineffective assistance of counsel fails.

*Excessive Sentence.*

Finally, Davalos-Romo alleges the court abused its discretion by imposing an excessive sentence. Specifically, Davalos-Romo argues that the court abused its discretion in imposing consecutive sentences. Upon our review, we find that the court did not abuse its discretion.

A sentence imposed within the statutory limits will not be disturbed absent an abuse of discretion. *State v. Abligo*, 312 Neb. 74, 978 N.W.2d 42 (2022). Davalos-Romo was convicted of two counts of attempting to aid and abet first degree sexual assault, each a Class III felony, and two counts of child abuse, each a Class IIIA felony. Statutory guidelines for a Class III felony in 2010 required a minimum of 1 year imprisonment and allowed for up to 20 years' imprisonment, a $25,000 fine, or both. Neb. Rev. Stat. § 28-105 (Reissue 2008). See, also, Neb. Rev. Stat. § 28-105(8) (Cum. Supp. 2020) (stating changes in the penalties by LB 605 for Class III and IIIA felonies do not apply to any offense committed prior to August 30, 2015). Statutory guidelines for a Class IIIA felony in 2010 allowed for up to 5 years' imprisonment, a $10,000 fine, or both. *Id.* Davalos-Romo's sentences of 10 to 20 years' imprisonment for each of her Class III felonies and 2 to 3 years' imprisonment for each of her Class IIIA felonies were within the statutory limits. Because the sentences imposed were within the applicable statutory ranges, the question is whether the district court abused its discretion.

An abuse of discretion occurs when a trial court's decision is based upon reasons or rulings that are untenable or unreasonable or if its action is clearly against conscience, reason, and evidence. *State v. Leahy*, 301 Neb. 228, 917 N.W.2d 895 (2018). Generally, it is within a trial court's discretion to direct that sentences imposed for separate crimes be served either concurrently

or consecutively. *Id.* In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's age, mentality, education and experience, social and cultural background, past criminal record or record of law-abiding conduct, and motivation for the offense, as well as the nature of the offense, and the amount of violence involved in the commission of the crime. *Id.*

The district court did not abuse its discretion in sentencing Davalos-Romo. The court thoroughly reviewed the information contained in the PSR, comments from counsel, and the nature of the offenses charged. The court acknowledged Davalos-Romo's minimal criminal history as well as her issues with her mental health. However, the court could not ignore the seriousness of the charges against Davalos-Romo and the damage that resulted to her daughters. Each of the victims wrote a statement to the court requesting that justice be served. The court found that imprisonment was necessary in this case because there was a strong likelihood, as indicated in the PSR, that Davalos-Romo would engage in criminal behavior if sentenced to a term of probation and because any lesser sentence would depreciate the seriousness of the offense. The court reflected on the harm caused to each of the victims and Davalos-Romo's attitude regarding the charges. Because the court carefully considered the applicable factors, it was not an abuse of discretion to sentence Davalos-Romo to consecutive terms for each of her four convictions.

## CONCLUSION

For the foregoing reasons, we affirm the order of the district court.

AFFIRMED.