Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/21/2022 09:06 AM CDT

State of Nebraska, appellee, v.
Paul B. Warner, appellant.
____ N.W.2d ___

Filed July 29, 2022.    No. S-21-733.

1.  **Pleas: Appeal and Error.** An appellate court will not disturb the trial court's ruling on a presentencing motion to withdraw a guilty or no contest plea absent an abuse of discretion.

2.  **Effectiveness of Counsel: Constitutional Law: Statutes: Records: Appeal and Error.** Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement.

3.  **Effectiveness of Counsel: Appeal and Error.** In reviewing a claim of ineffective assistance of trial counsel on direct appeal, an appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance.

4.  **Pleas.** When a defendant moves to withdraw his or her plea before sentencing, a court, in its discretion, may sustain the motion for any fair and just reason, provided that such withdrawal would not substantially prejudice the prosecution.

5.  **Pleas: Proof.** A defendant moving to withdraw his or her plea before sentencing has the burden to show the grounds for withdrawal by clear and convincing evidence.

6.  **Pleas.** A defendant's change of mind alone is not a fair and just reason to withdraw a guilty or no contest plea.

7.  **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the

defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding.

8. **Effectiveness of Counsel: Records: Appeal and Error.** The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the question.

Appeal from the District Court for Cass County: MICHAEL A. SMITH, Judge. Affirmed.

William F. Eustice for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

PAPIK, J.

On an evening in January 2020, Paul B. Warner physically attacked his wife, his son, and a friend. When law enforcement officers arrived at the scene, Warner fired a gun at them. Based on these incidents, the State charged Warner with 29 separate felonies. Although Warner obtained an opinion from a forensic psychiatrist that he was temporarily insane during the events at issue, Warner and the State entered into a plea agreement in which Warner agreed to plead guilty or no contest to six felony charges and the State agreed to dismiss all remaining charges. After the district court accepted Warner's no contest pleas to the agreed-upon charges, however, Warner filed a motion to withdraw his pleas. The district court overruled Warner's motion and sentenced him accordingly. Warner now appeals, primarily arguing that the district court should have permitted him to withdraw his pleas. He also contends that his trial counsel was ineffective in providing advice regarding the plea agreement. We find no error on the part of the district court and conclude that we are unable to review Warner's ineffective assistance of counsel claim on this record. Therefore, we affirm.

## BACKGROUND

*Initial Charges and Notice of Intention to*
*Rely Upon Insanity Defense.*

In May 2020, the State filed an information charging Warner with 29 separate felonies. The charged crimes included 4 counts of attempted first degree assault on an officer, 10 counts of use of a firearm to commit a felony, 1 count of attempted first degree assault, 8 counts of terroristic threats, 3 counts of use of a deadly weapon to commit a felony, 1 count of second degree assault, 1 count of strangulation, and 1 count of felony child abuse. The State alleged that all of the offenses were committed on January 22, 2020.

In October 2020, Warner filed a notice of intention to rely upon an insanity defense pursuant to Neb. Rev. Stat. § 29-2203 (Reissue 2016). The State responded with a motion also filed under § 29-2203, requesting an order directing that Warner be examined by "Dr. Hartmann" of the Lincoln Regional Center. The district court granted the State's motion and entered an order directing that Hartmann or other staff members of the Lincoln Regional Center inquire into Warner's sanity at the time of the commission of the alleged offenses and provide a written report to the district court regarding the same.

*Plea Agreement and Entry of No Contest Pleas.*

In March 2021, the parties appeared for a hearing and informed the district court that a plea agreement had been reached. A written copy of the plea agreement was received by the district court. Under the plea agreement, Warner agreed to plead guilty or no contest to use of a firearm to commit a felony, terroristic threats, second degree assault, felony child abuse, and two counts of attempted first degree assault on an officer. For its part, the State agreed that upon the district court's acceptance of Warner's pleas, it would dismiss all remaining counts asserted in the information. The State also agreed that it would recommend specific terms of imprisonment set out in the plea agreement.

The plea agreement also contained several express references to a possible insanity defense. Following the heading, "**Waiver of insanity defense**," the agreement provided: "By pleading guilty or no contest, [Warner] will be waiving any claim that he was legally insane at the time of this offense and will be found guilty of [the offenses to which he was entering a plea]." (Emphasis in original.) Another provision of the plea agreement provided that Warner had "had an adequate opportunity to discuss with defense counsel . . . [t]he facts and circumstances of the case [and] [a]ny factual and legal defenses that may be available in the case, including . . . not guilty by reason of insanity (if applicable)." In addition, the plea agreement provided that Warner understood that "by entering this plea and being sentenced under this agreement," he would give up the right to appeal "any issues relating to [Warner's] insanity at the time of this offense."

At the hearing, the district court questioned Warner and his counsel about the plea agreement. Both acknowledged that they had read it, discussed it, and signed it and that Warner had also initialed each page. Warner denied needing more time to discuss the plea agreement with his attorney. The district court explained each offense and its possible penalties to Warner. It also advised him of his rights to an attorney, to a jury trial, to a speedy trial, to confrontation, to testify or decline to testify, and to appeal the judgment. The district court informed Warner that if he pled no contest to the charges, he would be giving up all such rights with the exception of the right to an attorney and the right to appeal. Warner acknowledged that he understood and entered pleas of no contest in accordance with the plea agreement. When asked by the district court, Warner confirmed that he was entering the no contest pleas freely and voluntarily.

The district court then asked the State to provide a factual basis for the pleas. According to the State, on January 22, 2020, Warner was speaking with his wife and a friend in his garage when his behavior suddenly changed. Warner

subsequently poked his friend in the shoulder with a knife; pointed the knife at his friend and made a slashing motion; and grabbed his friend's hand and forced the knife into it, causing injury. Warner later grabbed his wife by the throat and pushed her to the ground and attacked her with a pair of antlers. When the couple's minor son attempted to defend his mother, Warner grabbed his son by the throat multiple times. Warner also threatened to kill his wife if their son did not get him the keys to his truck. Warner eventually backed his truck through the closed garage door and then ran on foot into a nearby wooded area. When law enforcement officers arrived and searched for Warner outside, he entered his house, but later emerged with a handgun. Despite the officers' instructions to drop the handgun, Warner raised the gun and fired at least two rounds in the direction of the officers, striking one of the patrol cars. The officers then returned fire, wounding Warner. Warner did not object or comment upon the factual basis provided by the State.

The district court found that Warner's pleas and waiver of rights were made knowingly, intelligently, and voluntarily and that there was a sufficient factual basis to support the pleas. It accepted his no contest pleas and dismissed the remaining counts. It ordered a presentence investigation report and scheduled the matter for sentencing.

*Motion to Withdraw Pleas.*

Prior to sentencing, new counsel entered an appearance on behalf of Warner. Shortly thereafter, Warner filed a motion to withdraw his prior pleas. The district court continued the sentencing hearing and set a hearing on Warner's motion to withdraw his pleas for the same day.

At the hearing on Warner's motion to withdraw his pleas, Warner testified that after the State filed its initial charges, Dr. Terry Davis, a forensic psychiatrist, examined Warner, reviewed various records and reports regarding the case, and determined that Warner was insane when he committed the acts that led to his prosecution. Warner offered, and the district

court received, a copy of a written report authored by Davis dated September 16, 2020.

In his report, Davis noted that Warner's behavior had changed drastically over the 2 or 3 weeks leading up to the alleged offenses. During that time, Warner claimed that he was the "reincarnation of King Arthur" and that aliens were following him and controlling his life. Davis observed that Warner had a history of depression and anxiety, but that he stopped taking prescribed psychotropic medications about 3 weeks prior to the events at issue. Davis concluded that Warner's actions on January 22, 2020, were "clearly irrational" and not "the actions of a man in command of his faculties." In Davis' opinion, Warner suffered a psychotic break on January 22; that but for the "manic and psychotic episode," the offenses would not have occurred; and that at that time, Warner was incapable of perceiving right from wrong. Although Davis believed that Warner was legally insane when he committed the acts for which he was charged, Davis also opined that Warner was competent to stand trial or to enter pleas to those charges with the caveat that Warner had no memory of the January 22 incident and would have to rely on other accounts.

Davis' report acknowledged that Warner admitted to drinking approximately three alcoholic beverages on January 22, 2020, and that Warner's wife believed that after Warner stopped taking his prescribed medications, he had begun "'self-medicating'" with marijuana. Davis also acknowledged several text messages Warner sent after the incident in which he stated that he became upset after he observed his wife "'flirting'" with his friend and attributed his actions to being drunk. Davis suggested that Warner may have preferred to be perceived as drunk rather than mentally ill and concluded his actions were the result of his mental health condition and not any drug or alcohol use.

Warner testified that at the time he entered his no contest pleas, he was aware of Davis' opinion that he was not

responsible by reason of insanity. He testified, however, that he wanted to withdraw his pleas, so that he could obtain a second opinion as to his sanity at the time of the charged offenses. Specifically, Warner testified that Hartmann began an examination of him but was unable to complete it. Warner asserted that he wanted Hartmann to complete the examination and that if Hartmann also found him insane at the time of the charged offenses, he would not enter any pleas. Warner also claimed that at the time he entered his pleas, he did not understand how to pursue a defense of not responsible by reason of insanity.

The district court denied Warner's motion to withdraw his pleas and immediately proceeded to sentence Warner.

*Sentencing.*

The district court sentenced Warner to a combined term of 18 to 32 years' imprisonment. The sentence followed the sentencing recommendation within the plea agreement.

Warner timely appealed.

## ASSIGNMENTS OF ERROR

Warner assigns that the district court erred (1) in not adjudicating his notice of intention to rely upon an insanity defense and (2) in denying his motion to withdraw his no contest pleas. He also assigns that his trial counsel was ineffective for not advising Warner against entering the plea agreement, given his potential insanity defense.

## STANDARD OF REVIEW

[1] A trial court has discretion to allow defendants to withdraw their guilty or no contest pleas before sentencing. *State v. Canaday*, 307 Neb. 407, 949 N.W.2d 348 (2020). An appellate court will not disturb the trial court's ruling on a presentencing motion to withdraw a guilty or no contest plea absent an abuse of discretion. *Id.*

[2,3] Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of

law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Theisen*, 306 Neb. 591, 946 N.W.2d 677 (2020). In reviewing a claim of ineffective assistance of trial counsel on direct appeal, an appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id.*

## ANALYSIS

*Notice of Intention to Rely Upon Insanity Defense.*

Warner's first assignment of error is not entirely clear. He appears to contend that his filing of a notice of intention to rely upon an insanity defense triggered an obligation on the part of the district court to determine, prior to trial and prior to accepting his pleas, whether Warner was insane at the time of the charged offenses. Warner does not explain the source of this purported obligation.

Nothing in § 29-2203, the statute that requires the filing of a notice of intention to rely upon an insanity defense, suggests that the district court has a pretrial obligation to determine the sanity of a defendant who has filed such a notice. To the contrary, various provisions of that statute indicate that the question of whether a defendant was insane at the time of the charged offenses is to be determined at trial. The statute provides that "[n]o evidence offered by the defendant for the purpose of establishing his or her insanity shall be admitted *in the trial of the case*" unless notice is provided to the district court and the county attorney in the manner prescribed. § 29-2203(1) (emphasis supplied). The statute also provides that "[i]f the trier of fact acquits the defendant on the grounds of insanity, the verdict shall reflect whether the trier acquits him or her on that ground alone or on other grounds as well." § 29-2203(3).

Warner's filing of a notice of intention to rely upon an insanity defense preserved his right to present evidence as to his sanity at trial. It did not require the district court to make any determination regarding Warner's sanity before trial, and it did not preclude the district court from accepting Warner's waiver of his right to trial when he entered his no contest pleas. Warner's first assignment of error is meritless.

*Motion to Withdraw No Contest Pleas.*

Warner next contends that the district court erred by overruling his motion to withdraw his no contest pleas. Before turning to Warner's arguments, we briefly review the standards governing motions to withdraw a guilty or no contest plea.

[4,5] The right to withdraw a plea previously entered is not absolute. *State v. Carr*, 294 Neb. 185, 881 N.W.2d 192 (2016). When a defendant moves to withdraw his or her plea before sentencing, a court, in its discretion, may sustain the motion for any fair and just reason, provided that such withdrawal would not substantially prejudice the prosecution. *Id.* The defendant has the burden to show the grounds for withdrawal by clear and convincing evidence. *Id.*

Warner offers a number of arguments as to why he should have been permitted to withdraw his no contest pleas. His primary argument is that a defendant cannot waive an insanity defense. Again, however, Warner offers no authority and little explanation for this assertion. Warner's counsel did clarify at oral argument that Warner is not contending that he was psychotic or suffering from any other condition that would render him incapable of entering a plea at the time of the plea hearing. Instead, it is Warner's position that because Davis had provided an opinion that he was insane at the time of the charged offenses, he could not waive the insanity defense by entering a plea. We see no reason, however, why a defendant who is competent to enter a plea could not waive a potential insanity defense just as he or she could waive any other defense. Indeed, were we to agree with Warner, a defendant with a

potential insanity defense would be deprived of the opportunity to enter into a plea agreement in the manner any other defendant may.

Alternatively, Warner suggests that he should have been permitted to withdraw his pleas because, at the time of the plea hearing, he did not understand the defense of not responsible by reason of insanity. The only evidence Warner points to in support of this argument, however, is his testimony that he "did not . . . understand how to pursue" a defense of not responsible by reason of insanity. Even if Warner did not understand the mechanics of how to pursue a defense of not responsible by reason of insanity, the record undermines any notion that he did not understand his no contest pleas would waive the right to rely on such a defense. As we have discussed above, the plea agreement, which Warner initialed, signed, discussed with his counsel, and stated a desire to enter, expressly provided that by entering the plea agreement, Warner was waiving the right to claim that he was legally insane at the time of the charged offenses and would be found guilty of the offenses to which he agreed to enter pleas. And, as we have emphasized, Warner makes no claim that, at the time of the plea hearing, he lacked competence to enter the pleas.

Finally, Warner contends that he should have been permitted to withdraw his pleas, so that Hartmann could complete the examination of his sanity. While we have recognized that newly discovered evidence can be a fair and just reason to allow for the withdrawal of a guilty or no contest plea before sentencing, see *State v. Carr*, 294 Neb. 185, 881 N.W.2d 192 (2016), Warner cannot make a claim of newly discovered evidence here. Warner did not discover new evidence to support an insanity defense after entering his pleas. At the time he entered his no contest pleas, Warner already knew about Davis' opinion that he was legally insane at the time of the charged offenses. See *U.S. v. Harvey*, 829 F.3d 586 (8th Cir. 2016) (holding that claims of innocence did not constitute fair and just reason to allow for withdrawal of plea because claim

was based on information available to defendant prior to plea). And, at the time Warner sought to withdraw his no contest pleas, he could not know whether Hartmann or any other expert would subsequently find that he was legally insane.

[6] Based on the evidence before us, Warner's desire to obtain a second opinion regarding his sanity and his desire to withdraw his pleas more generally appear to have been the result of nothing more than Warner's changing his mind about his earlier decision to enter no contest pleas. While it is understandable that a defendant might have second thoughts about a decision to enter a plea agreement, the Nebraska Court of Appeals has recently concluded that the fact that a defendant changed his or her mind is, on its own, an insufficient basis upon which to withdraw a plea. See *State v. Nollett*, 29 Neb. App. 282, 953 N.W.2d 57 (2020). Many other courts, both state and federal, have reached the same conclusion. See, e.g., *U.S. v. Brown*, 250 F.3d 811 (3d Cir. 2001); *U.S. v. Stuttley*, 103 F.3d 684 (8th Cir. 1996); *U.S. v. Rios-Ortiz*, 830 F.2d 1067 (9th Cir. 1987); *Winsted v. State*, 241 P.3d 497 (Wyo. 2010); *State v. Jenkins*, 303 Wis. 2d 157, 736 N.W.2d 24 (2007). We agree with this view and hold that a defendant's change of mind alone is not a fair and just reason to withdraw a guilty or no contest plea. If second thoughts alone could constitute a fair and just reason to withdraw a plea, the requirement that a defendant demonstrate a fair and just reason before being permitted to withdraw a plea would be rendered completely hollow.

Unpersuaded by any of Warner's arguments, we conclude that the district court did not abuse its discretion by overruling Warner's motion to withdraw his pleas.

*Ineffective Assistance of Counsel.*

Finally, Warner assigns and argues that his trial counsel was ineffective for not advising Warner against entering the plea agreement given his potential insanity defense. We find that our record is insufficient to review this claim on direct appeal.

[7,8] When, as here, a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *State v. Theisen*, 306 Neb. 591, 946 N.W.2d 677 (2020). The determining factor is whether the record is sufficient to adequately review the question. *Id.*

Our record in this case contains no information as to what trial counsel advised Warner regarding the plea agreement or a possible insanity defense. Neither does the record provide any indication about the reasoning that informed that counsel's advice. Because we cannot conclusively determine on this record whether counsel provided deficient performance or whether Warner was prejudiced by the alleged deficient performance, the record is insufficient to review this claim on direct appeal. See *State v. Mrza, supra*.

## CONCLUSION

Because we find no error on the part of the district court and cannot review Warner's ineffective assistance of counsel claim on this record, we affirm Warner's convictions.

Affirmed.