IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. LONG

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

RYAN G. LONG, APPELLANT.

Filed May 30, 2023.    No. A-22-504.

Appeal from the District Court for Lancaster County: JODI L. NELSON, Judge. Affirmed.

Trevin H. Preble and Coehn W. Preble, of Preble Law Firm, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Melissa R. Vincent for appellee.

RIEDMANN, BISHOP, and WELCH, Judges.

RIEDMANN, Judge.

## INTRODUCTION

This is Ryan G. Long's direct appeal from his convictions of second degree assault, use of a firearm to commit a felony, and possession of a firearm by a prohibited person following a jury trial in Lancaster County District Court. On appeal, Long argues the district court erred in admitting certain text messages into evidence over his objections, that the evidence was insufficient to support his convictions of second degree assault and use of a firearm to commit a felony, and that he received ineffective assistance of counsel. Following our review, we affirm.

## BACKGROUND

Long was charged with second degree assault, use of a firearm to commit a felony, and possession of a firearm by a prohibited person. Following a jury trial, he was convicted of all charges. He was sentenced to 10 to 20 years' imprisonment for his conviction of second degree assault, a mandatory minimum sentence of 5 to 15 years' imprisonment for his conviction of use

of a firearm to commit a felony, and a mandatory minimum sentence of 3 to 15 years' imprisonment for his conviction of possession of a firearm by a prohibited person. Evidence at trial relevant to Long's assigned error on appeal follows.

Long met Champaynne King in September or early October 2019, and although Long was married, he began a romantic relationship with her. The night of October 31, into November 1, King was with a group of people at a music studio, arriving sometime between 10 p.m. and midnight. King was drinking and was intoxicated. Long was also at the studio, although he had asked the host not to invite King there. King became angry with Long because she thought he was flirting with her cousin. Out of jealousy, King keyed Long's rental vehicle. King was also in an altercation with Long in which she broke his chain necklace. At some point in the evening, King took one of Long's two cellular phones. Long was unable to locate the phone and left the studio without it.

According to King, she left the studio with Chelan Garcia, who drove the two in an SUV toward the area of 21st and Garfield to meet with Long so King could return his phone. Long arrived, approached the car, and King and Long started arguing. Long was standing outside the driver's side of the vehicle, had a gun in his hand, and threatened to shoot King. King was in the passenger seat. Long, shooting through the open driver's side window, shot King in the right upper thigh; the bullet went straight through her leg. Long was standing completely outside the vehicle when he fired, but King did not know whether he reached into the vehicle or whether the gun went past Garcia's face.

Long got in his car and left. King did not notice she was shot at first because she was so intoxicated, but eventually started feeling pain in her leg, as well as numbness and tingling. King and Garcia went to Christy Coleman's home, and Coleman and Garcia both looked at King's injury. Coleman cleaned the injury with peroxide and wrapped it with bandages. The pants King had been wearing had a hole in them, and they gave her new pants and made her throw away the pants she had been wearing. Coleman disputed this, saying she did not think the pants were thrown away, but that she put the pants in a bag and gave them back, and that she asked if King wanted to go to a doctor, but King declined.

King testified that she and Garcia went to a hotel and stayed at least one night. King did not feel like she could leave the hotel and go to a hospital or go to law enforcement because she felt threatened and that it would not be the best situation if she did. Later, King did not seek further medical treatment because she had no health insurance and because she knew that with gunshot wounds the providers would make her speak to a police officer.

At some point after the shooting, King again began having contact with Long, seeing him at least once or twice a week. King did not remember exactly what Long said about the shooting, but knew it was along the lines of not reporting it to anyone and not to speak about it. In December 2019, after being contacted by law enforcement regarding a vehicle potentially being stolen from Long's wife, King told law enforcement about the shooting. Photographs of King's injuries were entered into evidence.

The vehicle Garcia had been driving the night of the shooting belonged to Coleman, who gave police permission to search it; the vehicle had been in an impound lot since November 3, 2019. There was a hole on the interior side of the passenger door just above the armrest. The door

panel was removed, but the bullet was not located. The car did not have the hole before Coleman allowed Garcia to drive it, but the hole was there the next time Coleman saw the car.

Over Long's objections, which will be discussed more fully below, text messages between Long's phone and an unidentified number were entered into evidence; while the number could not be identified through subscriber information, police believed the number was used by Garcia, because the phone log from that phone listed the same telephone numbers that Garcia called while incarcerated. The messages sent from the unidentified number were received with a limiting instruction to the jury, noting that they were received for proving context to the messages from Long's phone, as well as for the effect on the receiver of those text messages.

In a portion of the message exchange, the unidentified number sends a message stating "I don't see why you didn't pop that b**** when she was f****** JJ at the studio but you did it why you was or while she was in the car with me though let me in a situation f***** up," and sent another message that ends with ". . . you wasn't even aiming." Long responded "That's not what I'm upset about." The unidentified number sends another message stating, "The spent cell fell on my lap I still got the bullet," and Long's phone indicates a response of "I can give two fucks about that bitch." The unidentified number then contains a message "Yeah you blowing that hammered 2 inches from my face you don't give a f*** about me neither or my freedom," and the responding message from Long's phone states "I was hot because she was on some police shit that whole night," and "She broke my chain." The unidentified number responds, "And who knows he probably still is on some police s***," and Long's phone responds "She keyed that fuckn [sic] rental," "Man that bitch was just doin [sic] too much," "Playing with my phones."

Long testified against the advice of counsel and denied shooting King. The jury convicted him of all three charges. Long appeals.

## ASSIGNMENTS OF ERROR

Long assigns that (1) the district court erred by overruling his objection to the text messages because the messages could not be properly authenticated, were hearsay with no exception available, were offered for the truth of the matter asserted, and were more prejudicial than probative; (2) the district court erred by allowing the case to go to the jury when there was insufficient evidence to support a verdict because the alleged assault and use of a firearm to commit a felony could not be proven beyond a reasonable doubt; and (3) he was denied his right to effective assistance of counsel when trial counsel failed to contact or meet with a key witness.

## STANDARD OF REVIEW

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Henry*, 292 Neb. 834, 875 N.W.2d 374 (2016). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id*.

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh

the evidence; such matters are for the finders of fact. *State v. Thelen*, 305 Neb. 334, 940 N.W.2d 259 (2020). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*.

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Warner*, 312 Neb. 116, 977 N.W.2d 904 (2022). In reviewing a claim of ineffective assistance of trial counsel on direct appeal, an appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id*.

ANALYSIS

*Admissibility of Text Messages.*

At a hearing outside the presence of the jury, Long objected to the text messages contained in exhibit 32 because there was no subscriber information about the unknown phone number, so it was unknown if the messages were from Garcia, and that without Garcia testifying, Long would be denied his rights under the Confrontation Clause and under due process. Long's attorney had also previously noted that she intended to object based on hearsay. When the evidence was presented at trial she did not specifically list her objections again, but stated she was renewing her objections "as previously lodged." On appeal, Long assigns that the messages could not be properly authenticated, were hearsay with no exceptions available, were offered for the truth of the matter asserted, and were more prejudicial than probative.

To the extent Long preserved a hearsay objection, we find no error in the district court's overruling of that objection. Prior to ruling on Long's objections to the text messages, the district court held a brief sidebar during which it confirmed that the messages were not being offered for the truth of the matter asserted. The district court overruled the objection but gave a limiting instruction which specifically informed the jury that the incoming statements were not being received for the truth of the matter asserted but to put context to the messages alleged to be from Long's phone and for the effect on the receiver of the messages. By definition, a statement is hearsay when it is offered to prove the truth of the matter asserted. See Neb. Rev. Stat. § 27-801(3) (Cum. Supp. 2020). Because the incoming statements were not offered for that purpose, and the jury was specifically so instructed, the district court did not err in overruling Long's objection. See *State v Abligo*, 312 Neb. 74, 978 N.W.2d 42 (2022) (holding that text messages received which included messages from victim were properly admitted where jury was instructed they were not offered for truth of matter asserted, but instead to add context to defendant's texts).

As to Long's argument that the messages could not be authenticated, we find that the district court did not abuse its discretion in overruling the objection on this basis. At trial, Long argued that it was unknown who sent the messages and there was no subscriber information from the unknown number. He did not dispute that the responses to these messages derived from his cellular phone were from him. Under the Nebraska Rules of Evidence, the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence

sufficient to support a claim finding that the matter in question is what its proponent claims. *State v. Savage*, 301 Neb. 873, 920 N.W.2d 692 (2018), *modified on denial of rehearing* 302 Neb. 492, 924 N.W.2d 64 (2019).

The Nebraska Supreme Court has noted that this rule does not impose a high hurdle for authentication or identification. *Id*. A proponent of evidence is not required to conclusively prove the genuineness of the evidence or rule out all possibilities inconsistent with authenticity. *Id*. Generally, the foundation for the admissibility of text messages has two components: (1) whether the text messages were accurately transcribed and (2) who actually sent the text messages. *Id.* The proponent of text messages is not required to conclusively prove who authored the messages; rather, it need only prove the identity of the author by the greater weight of the evidence. See *id*. The possibility of an alteration or misuse by another generally goes to weight, not admissibility. *Id*.

Long argues the State failed to prove who was in control of the cellular telephone that sent the text messages to him. At trial, the State put forth circumstantial evidence that the phone number that sent the text messages was used by Garcia. Prior to its ruling on the admissibility, the district court confirmed with the State the incoming messages were being offered not for the truth of the matter asserted, but to put context to the conversation, for the effect on the receiver of the messages, as well as that the State believed the text messages were statements that were adopted by Long. The court issued a limiting instruction advising the jury that the exhibit was to be considered only for putting context to the outgoing text messages that were allegedly from Long's phone, and for the effect on the receiver of those texts.

Here, the State was using the text messages to show that *someone* sent messages to Long's phone regarding the shooting and that Long adopted the statements as his own, and to show context for Long's messages to the unidentified phone number. The State adduced evidence that the phone number sending the messages was likely associated with Garcia; we further note that in his own testimony, Long admitted the messages at issue were sent by a number that Garcia sometimes used. The State offered evidence sufficient to show that the messages were what the State claimed they were, that is, messages sent to Long's phone, likely from Garcia, that reference the shooting. After reviewing the record, we cannot say the district court abused its discretion in admitting the text messages into evidence over Long's objections. The import of the text messages was not that Garcia sent the messages, but rather that Long received these messages and his responses did not negate or dispute his shooting of King.

Long urges us to adopt a different test for establishing the authentication of text messages used by the Nevada Supreme Court in *Rodriguez v. State*, 128 Nev. 155, 273 P.3d 845 (2012). The Nebraska Supreme Court rejected a similar invitation in *State v. Savage, supra*, stating that it failed to see how application of the *Rodriguez* test would ease the analysis for the authentication of text messages or provide clarity. We reject the invitation for the same reason.

*Sufficiency of Evidence.*

Long argues that the district court erred by allowing the case to go to the jury when there was insufficient evidence to support a verdict because the alleged assault and use of a firearm to commit a felony could not be proven beyond a reasonable doubt. He does not challenge his conviction of possession of a firearm by a prohibited person.

In order to convict Long of the two disputed offenses, the State was required to prove that Long intentionally or knowingly caused bodily injury to King with a dangerous instrument or recklessly caused serious bodily to King with a dangerous instrument, and that he used a firearm to commit a felony. See, Neb. Rev. Stat. § 28-309 (Reissue 2016); Neb Rev. Stat. § 28-1205 (Reissue 2016). Serious bodily injury is defined as bodily injury which involves a substantial risk of death, or which involves substantial risk of serious permanent disfigurement, or protracted loss or impairment of the function of any part or organ of the body. Neb. Rev. Stat. § 28-109(21) (Reissue 2016).

The evidence presented, when viewed in the light most favorable to the prosecution, as it must be on direct appeal, showed that Long used a firearm to shoot King through the upper thigh. The photographs showed that King had two scars on her right upper thigh. She also testified that she still had shooting pains, and sometimes tingling and numbness. King also stated that she could not necessarily do everything that she used to be able to do, and that she was off of work for at least 2 months following the injury. The evidence presented was sufficient for the jury to find Long guilty of second degree assault and use of a firearm to commit a felony.

*Ineffective Assistance of Counsel.*

Long argues that he received ineffective assistance of trial counsel when counsel failed to contact or meet with Garcia. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Warner*, 312 Neb. 116, 977 N.W.2d 904 (2022). The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id*. The determining factor is whether the record is sufficient to adequately review the question. *Id*.

Long alleges that he is in receipt of an affidavit from Garcia which states that he was with King for the entirety of the events surrounding the case, and that he would have testified that he and King never met with Long that night and that King was shot when someone pulled up to the car and started shooting when Garcia was inside of a home. This claim involves matters outside the record. We are therefore unable to resolve this matter on the record before us on direct appeal.

CONCLUSION

After reviewing the record, we find that the district court did not abuse its discretion in admitting the text messages into evidence over Long's objections and that the evidence was sufficient to support the convictions. We determine the record is insufficient to address Long's claim that trial counsel was ineffective in failing to contact Garcia. We affirm the judgment of the district court.

AFFIRMED.