IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. RENA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

ZOE B. RENA, APPELLANT.

Filed August 22, 2023.    No. A-22-785.

Appeal from the District Court for Madison County: MARK A. JOHNSON, Judge. Affirmed.

Bradley A. Ewalt, of Ewalt Law Office, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.

PIRTLE, Chief Judge, and MOORE and RIEDMANN, Judges.

MOORE, Judge.

## INTRODUCTION

Following a jury trial in the Madison County District Court, Zoe B. Rena was convicted of possession of a controlled substance (methamphetamine). On appeal, Rena challenges the admission into evidence of a digital scale found in her bag at the time of her arrest. Rena also contends that her trial counsel was ineffective in failing to assert the defense that a glass pipe had been planted on her by law enforcement. We affirm.

## STATEMENT OF FACTS

On April 4, 2022, the State charged Rena in the county court for Madison County with possession of a controlled substance (methamphetamine). An essential element of the charge is that a person "knowingly or intentionally" possesses a controlled substance. See Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 2022). The case was subsequently bound over to district court where, on May 10, the State charged Rena as it had in county court.

On June 30, 2022, Rena filed several pretrial motions, including a motion in limine regarding the admissibility of the digital scale found in Rena's bag during her arrest on April 2, 2022. Rena alleged that any testimony or other evidence related to the scale was not relevant, would have a tendency to mislead the jury, and may confuse the actual issues. Rena also alleged that any probative value of the scale would be substantially outweighed by unfair prejudice.

A hearing on the motion in limine was held on August 2. Norfolk Police Division (NPD) Officer Justin Lindsay testified that the NPD had received a welfare check call from a woman on April 2 regarding an unresponsive individual in a Norfolk apartment. Lindsay and other officers made contact with Rena when they arrived on the scene and entered the apartment. Officers then discovered that there was an active warrant out for Rena's arrest in Lancaster County, and she was placed into custody.

Following Rena's arrest, she gave officers consent to search her bag. Inside, Lindsay found a black scale with white residue on top. In Lindsay's experience as an officer, he has found the use of a small digital scale, such as the one found in Rena's bag, to be indicative of the drug trade, as individuals weigh out "the product" to ensure an accurate amount when buying or selling. The scale was field tested for methamphetamine and returned a negative result.

The district court denied Rena's motion in limine, finding that because the scale was found in Rena's belongings and Lindsay testified that it was a scale typically associated with drug use, the evidence related to the scale was sufficiently relevant to be provided to the jury for consideration. The court also found that the Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 2016) considerations were not so overwhelming as to make the admission of the scale unfairly prejudicial. A written order memorializing the denial of the motion in limine was filed on August 3, 2022.

## JURY TRIAL EVIDENCE

A jury trial was held on August 9, 2022. Three NPD witnesses testified, and the following evidence was adduced.

Officer Josh Meyers testified that on April 2, 2022, he placed Rena under arrest due to a Lancaster County warrant. Pursuant to the arrest, Meyers searched Rena's person, turning out her pockets and performing a pat-down. Because Meyers is a male officer, he did not thoroughly search "certain locations on the female anatomy." Meyers did not find any weapons or contraband on Rena and she was transported to NPD headquarters. Later, Meyers reviewed the footage from his in-car video surveillance and noticed that while he was transporting Rena, she was fidgeting with the waistband of her pants.

At NPD headquarters, Meyers asked a female dispatcher, Veronica Martinez, to conduct another search. Martinez later called Meyers back to a changing area to inform him that she had found a pipe on Rena. Meyers took the pipe from Martinez and placed it into Lindsay's possession. In Meyers' opinion, the pipe found on Rena appeared to be a glass pipe commonly used to smoke methamphetamine. Meyers was able to observe a white residue inside of the pipe.

At trial, Lindsay testified consistently with his previous testimony offered at the hearing on August 2, 2022, regarding his consensual search of Rena's bag at the time of her arrest, finding a small digital scale inside, and the scale testing negative for methamphetamine. The State offered

the digital scale into evidence, and Rena objected based on relevance and renewed her motion in limine regarding the scale. The district court sustained Rena's relevancy objection until additional testimony demonstrated the scale's relevance.

Lindsay testified that based on his training and experience as an NPD officer, a digital scale like the one found in Rena's bag is associated with drug use because individuals use the scale to measure the volume of drugs they are purchasing or selling. The State then reoffered the scale and Rena made the same relevancy objection, which the district court overruled, and the scale was received into evidence.

Lindsay testified consistently with Meyers regarding Martinez' search of Rena at NPD headquarters and Martinez later finding a glass pipe on Rena. Lindsay was not present for Martinez' search of Rena, as is standard NPD procedure when an officer and detainee are of the opposite sex, due to privacy and safety concerns. Lindsay received the pipe from Meyers and noticed a white crystalline substance, commonly associated with methamphetamine, inside the pipe. Lindsay conducted a field test of the substance in the pipe, which tested positive for methamphetamine. The pipe was received into evidence.

Lindsay also sent the pipe in for testing at the Nebraska State Patrol crime lab. The crime lab report, confirming that the substance in the pipe was methamphetamine, was received into evidence.

Veronica Martinez, a dispatcher with the NPD, testified that she is occasionally called upon to search female detainees. On April 2, 2022, Martinez searched Rena when she arrived at headquarters for booking. During her initial search of Rena, Martinez searched her hair, the inside of Rena's bra, the inside of Rena's pockets, and down Rena's leg into her socks and shoes. During this search, Martinez did not find anything on Rena or notice any bulges in her clothing.

After Martinez' initial search, she escorted Rena into a back room so that Rena could change into different clothing. During the escort, Martinez was walking behind Rena and noticed a bulge on her left buttock. From the outline on Rena's clothing, Martinez believed the item to be a pipe of some kind. In the changing area, Martinez waited until Meyers was nearby and then removed the pipe from Rena's pants and handed it off to Meyers. Martinez recalled that the pipe was between Rena's pants and skin. Martinez identified the glass pipe in evidence as the pipe she removed from Rena's person. Because this second search was conducted inside of a cell used as a changing room, the area was not under video surveillance.

During closing arguments, Rena's trial counsel noted that initial searches of Rena by Meyers and Martinez found nothing on Rena's person. Regarding Martinez' second search of Rena, her trial counsel stated,

> it's not until she walks back to an area where we don't have any surveillance that she sees a bulge in Ms. Rena's back pocket, in an area that she just testified to that there wasn't anything there just a few moments prior. And so now after all that, after her search and after Officer Meyers' search, now all of a sudden there is a bulge in her back pocket and they find a pipe. And so I think this clearly negates that she knowing or intentionally possessed that pipe.

In its closing argument, the State questioned whether defense counsel was alleging "some massive conspiracy on behalf . . . of law enforcement."

That same day, after less than 20 minutes of deliberation, the jury returned its verdict finding Rena guilty of possession of a controlled substance (methamphetamine). The district court accepted the verdict and found Rena guilty of the sole count.

On September 23, 2022, the district court sentenced Rena to a term of 1 year of imprisonment with credit for 178 days served.

Rena appeals.

## ASSIGNMENTS OF ERROR

Rena assigns, restated, that (1) the district court erred in admitting the scale found in her bag into evidence, and (2) her trial counsel was ineffective in failing to argue the defense that the glass pipe had been planted on her by law enforcement.

## STANDARD OF REVIEW

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Elias*, 314 Neb. 494, 990 N.W.2d 905 (2023). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id*.

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Warner*, 312 Neb. 116, 977 N.W.2d 904 (2022). In reviewing a claim of ineffective assistance of trial counsel on direct appeal, an appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id*.

## ANALYSIS

### ADMISSION OF SCALE INTO EVIDENCE

Rena assigns the district court erred in admitting the scale found in her bag at the time of her arrest into evidence. Though Lindsay testified that a small digital scale is often a tool used in the drug trade, Rena notes that the scale found in her bag tested negative for methamphetamine. As she did at trial, Rena contends on appeal that the evidence of the scale was irrelevant and that even if it was relevant, it was unduly prejudicial.

Under Neb. Rev. Stat. § 27-401 (Reissue 2016), "[r]elevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The bar for establishing evidentiary relevance is not a high one and requires only the probative value of the evidence to be something more than nothing. *State v. Abligo*, 312 Neb. 74, 978 N.W.2d 42 (2022). See, also, *State v. Tucker*, 301 Neb. 856, 865, 920 N.W.2d 680, 688 (2018) ("[e]vidence is relevant if it tends in any degree to alter the probability of a material fact").

We conclude that the scale found in Rena's bag satisfied the low bar for evidentiary relevance. Both at the hearing on Rena's motion in limine and at trial, Lindsay testified that a

digital scale such as the one found in Rena's bag is associated with drug use because individuals use the scale to measure the volume of drugs they are purchasing or selling. The scale therefore made it more probable that Rena had intentionally possessed the methamphetamine found in the pipe on her person, as she had additional drug paraphernalia in her belongings. Because the scale altered the probability of this material fact, it was relevant. Thus, we find the district court did not abuse its discretion in admitting the scale into evidence.

Alternatively, Rena claims that even if the scale was relevant, it was unfairly prejudicial under § 27-403, which provides for the exclusion of relevant evidence when "its probative value is substantially outweighed by the danger of unfair prejudice." See § 27-403. She argues that the admission of the scale into evidence was more prejudicial than probative because the jury was presented with evidence of a crime, delivery of a controlled substance, "substantially greater than the one Appellant was charged with. . . ." Brief for appellant at 10.

As we found above, the scale was relevant to determine whether Rena had intentionally possessed methamphetamine. Further, as noted by the district court, it was for the jury to determine how much weight to assign the scale as a finder of fact in the case. Rena was not charged with delivery of a controlled substance, and she argues no error regarding any of the jury instructions relating to her single count of possession of a controlled substance. Rena does not assign error to the admission of the evidence showing methamphetamine on the pipe recovered during her search, which was clearly sufficient for the jury to conclude that Rena was guilty of possession. It cannot be said that the probative value of the scale was substantially outweighed by the danger of unfair prejudice. Finding no abuse of discretion, this argument fails.

INEFFECTIVE ASSISTANCE OF COUNSEL

Rena also assigns that her trial counsel was ineffective in failing to argue the defense that the glass pipe had been planted on her by law enforcement. While Rena's trial counsel had alluded to the possibility of law enforcement planting the pipe on Rena, trial counsel never expressly made this argument in her closing statement. Rena contends that because the jury was not presented with this defense, they were not able to consider it or find reasonable doubt in the case presented by the State.

An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *State v. Miranda*, 313 Neb. 358, 984 N.W.2d 261, (2023). When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id.*

Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.*

When a defendant's trial counsel is different from his or her counsel on direct appeal, as Rena's is here, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *Id*.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Miranda, supra*. To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. To show prejudice under the prejudice component of *Strickland*, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. *Id*.

We find that the record affirmatively refutes Rena's claim that her trial counsel was deficient in not presenting this defense to the jury. On cross examination trial counsel asked Meyers and Martinez to describe their initial searches of Rena and confirm that they did not find anything on her person during these searches. She also asked Martinez on cross examination to confirm that there was no video footage of the second search, as it had been conducted in a changing area that was not under surveillance. In her closing statement, trial counsel explicitly noted that the glass pipe was "all of a sudden" found on Rena after two searches by Meyers and Martinez, respectively, and that the pipe was recovered in an area not covered by video surveillance.

The jury was able to consider Meyers' and Martinez' credibility regarding their descriptions of the searches and Martinez ultimately discovering the pipe in Rena's pants. While Rena's counsel did not explicitly argue that the pipe was planted on Rena by law enforcement, as noted by the State during closing argument, counsel did indirectly suggest this possibility. Our review of the record shows that trial counsel adequately called into question Rena's knowing and intentional possession of the pipe. As such, it cannot be said that counsel's performance was deficient. This argument fails.

## CONCLUSION

We find that the district court did not abuse its discretion in admitting the scale found in Rena's bag into evidence. We also find that the record affirmatively refutes Rena's claim that trial counsel was ineffective. We affirm Rena's conviction and sentence.

AFFIRMED.