IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. ORTIZ

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

CORY S. ORTIZ, APPELLANT.

Filed June 20, 2023.    No. A-22-945.

Appeal from the District Court for Lancaster County: KEVIN R. MCMANAMAN, Judge. Affirmed.

Kristi J. Egger, Lancaster County Public Defender, and Matthew F. Meyerle for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.

RIEDMANN, BISHOP, and WELCH, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

Cory S. Ortiz appeals from his plea-based convictions of two counts of first degree sexual assault. On appeal, he argues the Lancaster County District Court imposed excessive sentences which were an abuse of discretion and that he received ineffective assistance of trial counsel in several respects. We affirm the decision of the district court.

## II. BACKGROUND

Ortiz was charged with one count of first degree sexual assault of a child, a Class IB felony, and one count of first degree sexual assault, a Class II felony. Later, he was also charged with tampering with a witness or informant, a Class II felony. A plea agreement provided that the State would reduce the charges and Ortiz would enter his pleas to the reduced charges. The charges were

- 1 -

amended to two counts of second degree sexual assault, Class IIA felonies. Ortiz pled no contest to both charges.

The State's factual basis alleged that on December 8, 2021, the victim, then 16 years old, disclosed to her school social worker that her mother's boyfriend, Ortiz, had been sexually abusing her for approximately 2 years, including digital penetration of her vagina. On December 14, the victim was forensically interviewed at the Child Advocacy Center (CAC), where she disclosed that Ortiz would rub her vagina with his fingers and make comments like "I'm going to stick it in you." Ortiz would say this when no one was around or when the victim's mother was outside. The abuse began when the family got a pool in 2020.

The victim disclosed that Ortiz would randomly walk into her room and give her backrubs and touch her. She also reported that Ortiz touched her vagina, and put his fingers in her vagina, and that he would bribe her with vapes and tell her he would give her the vapes if she was nice and let him give her backrubs. The victim understood "backrubs" to mean that he would feel her all over. The victim also reported that sometime during the summer, Ortiz told her to get in the bed in her mother's bedroom and to expose her breasts and that if she did not, he would expose them. Ortiz was trying to make the victim touch him by grabbing her hand. Ortiz had exposed his penis when the victim's mother walked into the room. The victim's mother reported that in June 2021, she had walked into her bedroom and saw Ortiz naked and the victim lying on the bed.

In December 2021, the victim's mother made several controlled calls to Ortiz, and when he was confronted about being sexual with the victim, he admitted to touching the victim's breasts once. Ortiz also said the victim would lay on him and his "dick would get hard" and that she would "[rub] on him in the pool" in the summer of 2020. He also admitted putting his fingers in the victim during that summer, when the victim was 15 years old. The victim later disclosed that when Ortiz would give her massages, he would have his penis out and would try to penetrate her but could not. Ortiz would then put his penis between the victim's butt cheeks and ejaculate on her back. The last time it happened was December 2021.

After the State provided the factual basis, trial counsel was asked if he had any dispute with the facts. Trial counsel stated that it was a "best interest plea" and that he would reserve further comments until sentencing. The district court explained to Ortiz that his no contest plea meant he was not admitting or denying the allegations, but that the plea must be based on sufficient facts. The district court inquired of Ortiz if it could use the facts recited by the State to meet the factual burden, and Ortiz agreed. The district court accepted the pleas and found Ortiz guilty of the charges. The district court ordered a presentence investigation report (PSI).

Ortiz was sentenced to 15 to 20 years' imprisonment for each count of second degree sexual assault. The sentences were ordered to be served consecutively. Ortiz appeals.

## III. ASSIGNMENTS OF ERROR

Ortiz assigns that the district court imposed excessive sentences that were an abuse of discretion. He also argues he received ineffective assistance of counsel in that trial counsel: (a) failed to adequately investigate the case and prepare a defense by failing to identify and depose the persons to whom the victim made the initial disclosure regarding alleged abuse, and to communicate with him regarding the merits of identifying such witnesses; (b) failed to comment on or dispute the State's factual basis supporting count II when given an opportunity to do so by

the court, both at the time of plea and sentencing; (c) failed to review the deposition of the victim with him and to discuss the inconsistencies between her statements in the deposition and her statements made during a prior interview with the CAC, and to advise him how such inconsistencies could support a defense to count I; (d) failed to review the victim's therapy and medical records with him and advise him how inconsistencies in the victim's statements to the medical professionals could support a defense; (e) failed to advise him that the plea offer, which was contingent upon him forgoing the right to have DNA testing completed on certain evidence, would permanently foreclose his right to seek such testing under the DNA Testing Act; and (f) failed to review the PSI with him in detail prior to sentencing and adequately prepare him for sentencing.

## IV. STANDARD OF REVIEW

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *Id*.

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Warner*, 312 Neb. 116, 977 N.W.2d 904 (2022). In reviewing a claim of ineffective assistance of trial counsel on direct appeal, an appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id*.

## V. ANALYSIS

### 1. EXCESSIVE SENTENCES

Ortiz argues that the sentences imposed were excessive and constituted an abuse of discretion. When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Blake, supra*. The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

Ortiz was convicted of two Class IIA felonies, which are punishable by a maximum sentence of 20 years' imprisonment with no minimum sentence required. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022). For each conviction of a Class IIA felony, Ortiz received a sentence of 15 to 20 years' imprisonment. This is within the statutory limits.

In the PSI, Ortiz scored in the very high risk level on the Level of Service Case Management Inventory. His criminal history includes charges for unauthorized use of a financial

transaction device, possession of a controlled substance, escape, assault, and disturbing the peace. When describing the offense for which he was being charged Ortiz described it as a "[m]isinterpretation of affection."

Ortiz argues that the district court failed to take into consideration his mentality, in that he showed remorse and a desire to change. He also contends he had a difficult childhood which could explain his impulsive behavior. But the PSI contained this information and at sentencing, the district court noted it was required to consider Ortiz' age, education, mentality, social and cultural background, criminal record, motivation, and nature of the offense. It noted that the motivation for the crime appeared to have just been selfish acts on Ortiz' part and that the victim was a child. The district court referenced that Ortiz had letters submitted that showed he had some community support. But it stated that Ortiz needed significant treatment, and it thought that was best provided while in custody. The district court also noted that the safety of the community could not be emphasized enough in a case like this.

Having reviewed the PSI and the record of the sentencing hearing, we cannot say the district court abused its discretion in imposing the sentences.

## 2. INEFFECTIVE ASSISTANCE OF COUNSEL

Ortiz assigns numerous claims of ineffective assistance of trial counsel. When a defendant's trial counsel is different from his or her counsel on direct appeal, he or she must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Warner*, 312 Neb. 116, 977 N.W.2d 904 (2022). The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id*. The determining factor is whether the record is sufficient to adequately review the question. *Id*.

### (a) Failure to Identify and Depose Specific Witnesses

Ortiz argues that trial counsel was ineffective when he failed to adequately investigate the case and prepare a defense by failing to identify and depose the persons to whom the victim made the initial disclosure regarding alleged abuse, and to communicate with him regarding the merits of identifying such witnesses. When the claim of ineffective assistance on direct appeal involves uncalled witnesses, vague assertions that counsel was deficient for failing to call "witnesses" are little more than placeholders and do not sufficiently preserve the claim. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). However, the appellate court does not need specific factual allegations as to what the person or persons would have said, which will not be found in the appellate record. *Id*. It is sufficient that appellate counsel give on direct appeal the names or descriptions of any uncalled witnesses forming the basis of a claim of ineffective assistance of trial counsel. *Id*. Such specificity is necessary so that the postconviction court may later identify whether a particular claim of failing to investigate a witness is the same one that was raised on direct appeal. *Id*.

Here, while Ortiz does not specifically name the witnesses in his assigned error, he does limit their identity to those to whom the victim made her initial disclosures and in the argument section of his brief he identifies them by name and profession. This claim of failure to identify and

depose these witnesses is sufficiently stated. However, the record before us on direct appeal is insufficient to address this claim. As to the three individuals identified in Ortiz' brief, this assigned error is preserved for postconviction review.

### (b) Failure to Comment on Factual Basis

Ortiz assigns that trial counsel was ineffective in failing to comment on or dispute the State's factual basis supporting count II when given an opportunity to do so by the court, both at the time of plea and at sentencing. Ortiz argues that trial counsel was ineffective in failing to challenge discrepancies in the victim's statements and descriptions that formed the factual basis, specifically as to whether he ejaculated. He argues that although the victim stated in both her deposition and in her CAC interview that Ortiz either did not ejaculate, or she could not remember if he did, the State's factual basis asserted that he did.

The Nebraska Supreme Court has previously held that a defendant suffered no prejudice from misstatements in the factual basis that were not necessary to establish an element of the crime. See *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). In this case, ejaculation was not an element of the crime of second degree sexual assault. See Neb. Rev. Stat. § 28-320 (Reissue 2016). Therefore, misstatements as to whether Ortiz did or did not ejaculate, cannot result in prejudice to him and we reject Ortiz' claim that counsel was ineffective in failing to highlight this discrepancy.

### (c) Failure to Review Victim's Deposition

Ortiz assigns that trial counsel was ineffective in failing to review the deposition of the victim with him and to discuss the inconsistencies between her statements in the deposition and her statements made during a prior interview with the CAC, and to advise him how such inconsistencies could support a defense to count I. Count I originally charged Ortiz with first degree sexual assault of a child involving sexual penetration between March 3, 2020 and March 2, 2021.

Ortiz identifies certain statements made by the victim during her CAC interview that he claims are inconsistent with statements she made in her deposition, specifically whether sexual contact occurred in the family swimming pool in June 2020.

Normally, a voluntary guilty plea waives all defenses to a criminal charge. *State v. Manjikian*, 303 Neb. 100, 927 N.W.2d 48 (2019). However, in a postconviction proceeding brought by a defendant convicted because of a guilty plea or a plea of no contest, a court will consider an allegation that the plea was the result of ineffective assistance of counsel. *Id*. When a conviction is based upon a guilty plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *Id*.

The likelihood of the defense's success had the defendant insisted on going to trial is relevant to the prejudice analysis; it is relevant to the consideration of whether a rational defendant would have insisted on going to trial. *Id*. The likelihood of the defense's success had the defendant gone to trial should be considered along with other factors, such as the likely penalties the defendant would have faced if convicted at trial, the relative benefit of the plea bargain, and the strength of the State's case. *Id*.

Although Ortiz references "inconsistencies" made by the victim, he identifies only one in his brief. Specifically, he states

> During her [CAC] Interview, [the victim] told the interviewer that the alleged abuse began when the family got a swimming pool in June of 2020. This same allegation comprised the State's factual basis for Count 1. . . . However, during her deposition, [the victim] stated that she did not know or could not remember any sexual contact occurring in the pool. When asked by the prosecutor during the deposition, specifically, whether [Ortiz] would ever touch her inappropriately during that time, [the victim] responded "no."

Brief for appellant at 23-24. Contrary to our rules of appellate practice, Ortiz does not provide citations to the CAC interview or the deposition, both of which are contained in the PSI. See Neb. R. App. P. § 2-109(C)(3) (references to documents not in bill of exceptions but nonetheless subject to review by appellate court, such as PSI, shall identify document, followed by comma and page on which material to which reference is made appears).

However, our review of the CAC interview reveals that the victim stated she and Ortiz were in the pool and she was bored so she "started clinging on to [Ortiz] . . . like a playful like hey play something with her [sic], do something with me" and Ortiz "took it as the wrong way." She explained "I just think he took it the wrong way because after that it's been going on." She did not identify any sexual contact that occurred in the pool at that time.

In the victim's deposition, she was asked if "anything ever happen[ed] between [her and Ortiz] around the pool." The victim described that Ortiz "lift[ed] me up and down." When asked if anything else happened in the pool, she responded she was not sure and denied that Ortiz touched her inappropriately at that time.

Contrary to Ortiz' interpretation, we do not read the victim's statements to be inconsistent; rather, in the CAC interview, the victim explained that Ortiz' sexual contact began after she tried to get him to play with her in the pool, not that any sexual activity took place in the pool at that time. There is nothing inconsistent with the victim's later deposition testimony in which she confirmed that nothing happened in the pool at that time other than Ortiz "lifting [her] up and down."

In determining whether Ortiz would have rejected the plea offer and insisted on going to trial if counsel had pointed out the victim's statements set forth above, we must also consider the evidence against him. In addition to the victim's testimony, the State also had evidence from Ortiz himself. Ortiz admitted, as noted in the factual basis, to putting his fingers in the victim during the summer of 2020, and to touching the victim's breasts.

Without the plea agreement, Ortiz would have gone to trial on charges of first degree sexual assault of a child, a Class IB felony, with a mandatory minimum sentence of 15 years' imprisonment upon conviction; first degree sexual assault, a Class II felony, with possible imprisonment of 1 to 50 years; and tampering with a witness or informant, a Class II felony, with possible imprisonment of 1 to 50 years. The plea agreement allowed Ortiz to plead to two counts of second degree sexual assault, each a Class IIA felony, with possible imprisonment of 0 to 20 years. This plea agreement allowed Ortiz to escape a 15-year mandatory minimum sentence if convicted of first degree sexual assault of a child and the potential of two additional sentences up to 50 years' imprisonment each if convicted of the other two charges.

Considering the strength of the State's case and the possible penalties, compared with the alleged discrepancies Ortiz alleges between the interview and the deposition, he cannot show a reasonable probability that he would have insisted on going to trial rather than entering into the plea agreement. We reject this claim.

### (d) Failure to Review Victim's Medical Records

Ortiz assigns that trial counsel was ineffective in failing to review the victim's therapy and medical records with him and advise him how inconsistencies in the victim's statements to medical professionals could support a defense. We note that trial counsel requested, and was granted, a continuance to allow him to review the victim's therapy records, but there is no other evidence regarding this information in the record before us on direct appeal. We are therefore unable to address this claim. It is preserved for postconviction review.

### (e) Failure to Advise on DNA Testing

Ortiz argues that trial counsel was ineffective in failing to advise him that the plea offer, which was contingent upon him forgoing the right to have DNA testing completed on certain evidence, would permanently foreclose his right to seek such testing under the DNA Testing Act. The State requested a continuance earlier in the case because the State had been unaware DNA testing had not yet taken place and the State wished to have it completed. Ortiz argues that a blanket with an alleged semen stain was taken from the victim's room, and that DNA results from the testing could have been exculpatory because it could have shown another source for the semen, which would be relevant to show that it was less likely the most recent assault alleged by the victim and relied upon by the State for count II had occurred or been perpetrated by him.

However, even if the blanket had been tested, or was to be tested at some point in the future, the results would not exculpate Ortiz. The factual basis for the charge alleged that he ejaculated on the victim's back. The factual basis stated that the victim identified Ortiz as the person who assaulted her, not that she was unsure of the identity of the assailant, and other evidence in the case had pointed to Ortiz as the assailant. Even if another person's DNA were to be found, it does not mean that Ortiz could not have committed the crimes of which he was accused or that someone else committed the assault despite the victim identifying Ortiz. Even if Ortiz could show that trial counsel performed deficiently, he could not show prejudice. This claim fails.

### (f) Failure to Review PSI

Ortiz assigns that trial counsel was ineffective in failing to review the PSI with him in detail prior to sentencing and to adequately prepare him for sentencing. He argues that the district court took exception to a phrase he used in the PSI, and that had trial counsel discussed this information with him ahead of time, he could have attempted to clarify or rephrase his intended meaning. The record before us on direct appeal is insufficient to address this claim.

## VI. CONCLUSION

We find the district court did not abuse its discretion in sentencing. His claims of ineffective assistance of counsel related to the failure to comment on the factual basis at the plea and sentencing hearing, the failure to review the victim's CAC interview for discrepancies with her deposition, and the failure to advise regarding DNA testing are without merit. The remaining

claims of ineffective of counsel are unable to be addressed on direct appeal and are preserved for postconviction review.

AFFIRMED.