IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. CONNER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

TERENCE C. CONNER, APPELLANT.

Filed September 2, 2025.    No. A-25-091.

Appeal from the District Court for Lancaster County: KEVIN R. MCMANAMAN, Judge. Affirmed.

Robert W. Kortus, of the Nebraska Commission on Public Advocacy, for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.

PIRTLE, BISHOP, and WELCH, Judges.

BISHOP, Judge.

### INTRODUCTION

Pursuant to a plea agreement, Terence C. Conner entered no contest pleas in the Lancaster County District Court to attempted first degree sexual assault of a child and second degree sexual assault of a child. The district court sentenced him to an aggregate sentence of 70 to 90 years' imprisonment. On appeal, Conner contends that the court imposed excessive sentences and that his trial counsel was ineffective by rendering deficient performance during plea negotiations. We affirm.

### BACKGROUND

On April 10, 2024, the State filed an information charging Conner with one count of child enticement with an electronic communication device, a Class ID felony, in violation of Neb. Rev.

- 1 -

Stat. § 28-320.02 (Reissue 2016), and one count of witness tampering, a Class II felony, in violation of Neb. Rev. Stat. § 28-919(1) (Cum. Supp. 2024).

On October 22, 2024, the State filed an amended information charging Conner with attempted first degree sexual assault of a child, a Class II felony, in violation of Neb. Rev. Stat. §§ 28-201(4)(a) and 28-319.01 (Reissue 2016), and second degree sexual assault of a child, a Class II felony, in violation of Neb. Rev. Stat. § 28-320.01(2) (Reissue 2016). The amended information alleged that one or more of the offenses constituted an aggravated offense, as that term is defined by Neb. Rev. Stat. § 29-4001.01(1) (Reissue 2016). At a hearing that same day, Conner entered pleas of no contest to the charges set forth in the amended information. Conner also stipulated that both charges constituted aggravated offenses, and he agreed not to object to the imposition of consecutive sentences. In exchange, the State agreed to dismiss the charge of electronic child enticement, to not add an additional charge of first degree sexual assault of a child (Class IB felony) involving the same victim and timeframe, and to forego or dismiss two counts of tampering with a witness (Class II felony) occurring March 1, 2024. Both Conner and his attorney confirmed their understanding and acceptance of these terms.

According to the State's factual basis, on December 19, 2023, the Lincoln Police Department received a report concerning K.K., a pregnant 15-year-old, who was sexually assaulted by her mother's boyfriend, Conner.

K.K. participated in a forensic interview on February 13, 2024. She disclosed that a sexual relationship with Conner started when she was 13 years old and he was 33 years old, and that it continued until she was 14 or 15 years old. The initial sexual assault involved forced penile-vaginal intercourse. Sexual assaults continued on-and-off for more than a year and occurred at various locations in Lincoln, Nebraska. The sexual assaults ceased after K.K. became pregnant. Conner instructed her to fabricate a narrative regarding the pregnancy's origin. K.K. was scared to disclose the sexual assaults because Conner had physically assaulted her mother in the past, and he threatened to "kick[]" K.K. out of the home and separate her from her family if she told of the assaults.

Conner's then 14-year-old daughter, T.M., was also forensically interviewed. T.M. reported that she suspected Conner was sexually assaulting K.K. The State alleged that T.M. would further testify that she read messages on K.K.'s phone from Conner soliciting sex in exchange for money, and that K.K. rejected Conner. K.K. cried when T.M. confronted her. K.K. stated she was afraid to tell her mother due to fear of Conner's reaction.

Text messages were found on Conner's phone that corroborated his solicitations of illicit images and sexual acts in exchange for money or drugs.

Conner was arrested on February 13, 2024. On March 1, he contacted K.K. and T.M. from jail and attempted to persuade them to recant their statements and to tell the police that they had planted the text messages.

K.K.'s baby was born in April 2024, and DNA analysis confirmed Conner's paternity with 99.999 percent certainty.

At the plea hearing, the district court advised Conner of his constitutional rights. Conner affirmed he had discussed these rights with his attorney and understood them. He confirmed he was waiving these rights freely, voluntarily, knowingly, and intelligently. He expressed satisfaction with his legal representation and affirmed he had sufficient time to discuss his case

and defenses with his attorney. Conner affirmed his understanding of the nature of the charges against him and the possible penalties and consequences he faced by entering his pleas. He also affirmed that no promises or threats had been made to obtain his pleas.

The district court accepted Conner's pleas, finding them to be freely, voluntarily, knowingly, and intelligently entered. The court then found him guilty of the two counts in the amended information and found that both constituted aggravated offenses.

On January 23, 2025, Conner was sentenced to consecutive terms of 40 to 45 years' imprisonment for attempted first degree sexual assault of a child and 30 to 45 years' imprisonment for second degree sexual assault of a child. He was given credit for 344 days served. Conner was also ordered to comply with the Nebraska Sex Offender Registration Act, and he was subject to lifetime community supervision.

Conner appeals.

## ASSIGNMENT OF ERROR

Conner assigns that (1) the district court imposed excessive sentences and (2) his trial counsel was ineffective by rendering deficient performance during plea negotiations.

## STANDARDS OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Rivera-Meister*, 318 Neb. 164, 14 N.W.3d 1 (2024). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, or evidence. *Id.*

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## ANALYSIS

### EXCESSIVE SENTENCE

Conner was convicted of attempted first degree sexual assault of a child and second degree sexual assault of a child; both are Class II felonies punishable by 1 to 50 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Reissue 2016). Conner was sentenced to an aggregate of 70 to 90 years' imprisonment. Conner's sentences are within the statutory limits. Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Rivera-Meister, supra.*

In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in

the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *State v. Ezell*, 314 Neb. 825, 993 N.W.2d 449 (2023). Generally, it is within a trial court's discretion to direct that sentences imposed for separate crimes be served either concurrently or consecutively. *Id.* For a defendant who has been sentenced consecutively for two or more crimes, we generally consider the aggregate sentence to determine if it is excessive. *Id.*

Conner's presentence investigation report (PSR) reveals the following information. He was 36 years old at the time of sentencing and had six children. He had a 7th grade education, had not completed high school or obtained a GED, and was unemployed. Conner reported a long history of substance abuse, including daily use of marijuana, alcohol, and Percocet; he had also used cocaine and ecstasy several times. He claimed to have been under the influence of alcohol, marijuana, cocaine, and Percocet during the current offenses. The PSR also details household instability in his childhood, physical abuse by a parent, trauma, and exposure to violence.

Conner's criminal record includes convictions for burglary in 2006 and "Felon Carrying Concealed Weapon" in 2008. Conner reported that he was sentenced to prison for those offenses and was 17 years old when he went to prison.

The probation officer conducted a "Level of Service/Case Management Inventory" as part of the presentence investigation and Conner was assessed as a "[v]ery [h]igh" risk to reoffend. He scored in the "[v]ery [h]igh" risk range in the criminogenic risk factor domains for education/employment, companions, alcohol/drug problems, and antisocial pattern. He scored in the "[h]igh" risk range in the domain for leisure/recreation. And he scored in the "[m]edium" risk range in the domains for criminal history, family/marital, and procriminal attitude. Conversely, on the "Vermont Assessment of Sex Offender Risk-2" and the "Sex Offender Treatment Intervention and Progress Scale" assessments, he scored in the "low" risk category for sexual reoffending.

During the presentence investigation interview, Conner accepted some responsibility for the present offenses. He stated, "I just want to apologize for the incident. I feel very sorry for my actions. I let the drugs and alcohol get the better of me." However, he also made statements minimizing his conduct, including that K.K. "seduce[d]" him and that K.K. was "getting the attention she wanted."

At the sentencing hearing, Conner's counsel asked the district court to impose concurrent sentences "that would allow Mr. Conner to reenter the community while he still has something to give," noting that he had six dependents and paid child support. Counsel argued that Conner scored "low in both of the sex offender related evaluations" in the PSR and had a limited criminal history. "[H]e's not a monster," "[h]e made a mistake" "and succumbed to his baser natures while he was struggling with serious chemical addiction." Conner "was remorseful" and "realizes how much harm he caused."

Conner personally apologized to the victim and her mother. He asked the district court to "be lenient" and give him a "second chance" to be a part of his children's lives upon his release.

The State pointed out the "serious nature of this offense" in that Conner began "forcibly sexually assaulting" the victim when she was 13 years old and impregnated her when she was 14 years old. As a result of the abuse, the victim "harbors a misplaced sense of guilt or shame," and "left school last year and disengaged with life." The State argued that Conner "pays lip service to

taking responsibility" in the PSR, but then claimed he was "unfairly charged" because the victim seduced him. The State requested a "substantial period of incarceration" with consecutive sentences.

The district court stated it had reviewed and considered the PSR, the letters submitted on Conner's behalf, the victim impact statement, the research provided by Conner's trial counsel, and the statements made by counsel at the sentencing hearing. The court expressly stated it considered Conner's age, education, mentality, social and cultural background, criminal history, the motivation for the offenses, and the nature of the offenses. The court found that Conner's motivation was "purely sexual gratification, power and control," and that the crimes involved "doing violence to a child[.]" It further noted that Conner's "LS/CMI" score placed him in the "very high risk to reoffend" category, but it also acknowledged the "other scales." The court then sentenced Conner as set forth previously.

Conner contends that the district court imposed excessive sentences that were not tailored to fit his individual circumstances. According to Conner, "[t]he harshest sentences should be reserved for the most serious offenders," and he "is not among the most serious offenders." Brief for appellant at 14. He asserts that when a sentencing court provides "minimal explanation," appellate review is made more difficult. *Id.* He emphasizes that his criminal history is limited and did not display a pattern of violence, that he was struggling with serious substance abuse at the time of the offense, and that he had taken steps toward rehabilitation. He also notes his low-risk scores on the Vermont Assessment of Sex Offender Risk-2 and the Sex Offender Treatment Intervention and Progress Scale. Conner contends that "[t]here is no way to assess whether the results of those two testing instruments were thoughtfully, fully and meaningfully considered because of the dearth of sentencing comments." *Id.* at 15. He also argues that the court abused its discretion by not ordering concurrent sentences.

Conner's crimes involved multiple incidents of sexual contact with a 13-year-old child. K.K. became pregnant, and the offenses caused significant trauma and disruption to her life and family. Although Conner urges this court to modify the sentence, the record reflects that the district court considered the relevant statutory factors and made a reasoned sentencing decision based on the seriousness of the offenses, Conner's background, and the need to protect the public. Having reviewed the record, we cannot say the district court abused its discretion in imposing Conner's sentences.

INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Generally, a voluntary guilty plea or plea of no contest waives all defenses to a criminal charge. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). Thus, when a defendant pleads guilty or no contest, he or she is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel. *Id.*

Conner has different counsel on direct appeal than he did in the district court. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). Once raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id.* A record is sufficient if it establishes either

that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *State v. Theisen*, 306 Neb. 591, 946 N.W.2d 677 (2020).

When a claim of ineffective assistance of trial counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Lierman, supra*. Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Blaha, supra*. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Id.* When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *Id.* The two prongs of the ineffective assistance of counsel test under *Strickland* may be addressed in either order. *State v. Blaha, supra*.

Conner claims that his trial counsel provided ineffective assistance during plea negotiations "by failing to make a sufficient counteroffer to the proposal extended by the State." Brief for appellant at 9. He asserts that, "had a more favorable agreement been available[,] he would have accepted that agreement and waived his right to trial." *Id.* at 19. He also contends that he was not "adequately informed by his attorney of the probability of receiving a sentence of imprisonment equally severe to the sentences [he] would have received had the case proceeded to trial." *Id.*

The State argues that the record refutes Conner's ineffective assistance of counsel claim. We agree. During the plea hearing, Conner was arraigned on the amended information, and was informed that each count charged in the amended information carried a possibility of 1 to 50 years' imprisonment. Conner affirmed his understanding of the charges and possible penalties. The district court specifically asked Conner if he understood that the sentences could run concurrent or consecutive, and he responded in the affirmative. The plea agreement was recounted on the record, and part of the plea agreement was that Conner would not object if the court imposed consecutive sentences. The district court questioned Conner about his communications with trial counsel and his understanding of the proceedings.

> THE COURT: Have you gone through and discussed all of the facts and all of the possible defenses you might have with your lawyer?
>
> [Conner]: Yes, sir.
>
> THE COURT: Are you satisfied with the advice and representation given to you by your lawyer in this case?
>
> [Conner]: Yes, sir.
>
> THE COURT: Before I accept your plea, do you need any more time to discuss this case with your lawyer?
>
> [Conner]: No, sir.

THE COURT: Are you satisfied, then, with the advice and representation of [your lawyer] in this case?

[Conner]: Yes, sir.

THE COURT: Do you have a complete understanding, then, of what it means to offer your plea?

[Conner]: Yes, sir.

THE COURT: Are you entering this plea of your own free will and without any reservations?

[Conner]: Yes, sir.

These statements affirm that Conner understood the nature of the charges, had discussed possible defenses with counsel, and was satisfied with counsel's performance. At no point during the plea hearing did Conner express confusion, hesitation, or dissatisfaction with the plea process or the negotiations that preceded it.

Even if Conner could show that his trial counsel performed deficiently during plea negotiations, his claim would nonetheless fail because he cannot establish prejudice. The likelihood of Conner's success had he insisted on going to trial is relevant to the prejudice analysis. See *State v. Manjikian*, 303 Neb. 100, 927 N.W.2d 48 (2019) (likelihood of defendant's success is relevant to consideration of whether rational defendant would have insisted on going to trial). The likelihood of the defense's success had the defendant gone to trial should be considered along with other factors, such as the likely penalties the defendant would have faced if convicted at trial, the relative benefit of the plea bargain, and the strength of the State's case. *Id*.

Conner does not identify any alternative plea terms that should have been pursued, nor does he offer any basis to conclude the State would have agreed to more favorable terms. In reaching the plea agreement, the State agreed to dismiss the charge of electronic child enticement (Class ID felony), to not add an additional charge of first degree sexual assault of a child (Class IB felony) involving the same victim and timeframe, and to forego or dismiss two counts of tampering with a witness (Class II felony). Further, the record shows the State possessed strong corroborating evidence, including detailed forensic interviews with the victim describing ongoing sexual assault, messages on Conner's phone soliciting sexual conduct, and other inculpatory evidence. Given the other potential charges and the strength of the evidence against him, Conner cannot show a reasonable probability that but for the alleged error of counsel, he would have insisted on going to trial rather than pleading guilty.

Because Conner's claim is refuted by the record and/or he cannot establish prejudice, his ineffective assistance of counsel claim fails.

CONCLUSION

For the foregoing reasons, we affirm Conner's convictions and the district court's January 23, 2025, sentencing order.

AFFIRMED.